## HAWLEY *against* HARRALL and another.

No particular time is prescribed by law within which the damages assessed for the laying-out of a new street in the city of *Bridgeport,* shall be paid to the persons entitled to receive them, or deposited in the city treasury for their use; it being only necessary this be done in a reasonable time, and before the street is opened.

Therefore, where a new street in that city having been laid out and established, and the damages assessed, an order was passed, by the court of common council, on the 16th of *March,* directing that the street be opened on the 1st of *April* following; the damages assessed were paid into the city treasury, on the 11th of *May;* the party entitled to them received them, on the 21st of the same month; and on the 5th of *June,* a warrant was issued, by order of the court of common council, for the removal of a building owned by such party, standing in the street and constituting a nuisance therein; it was held, 1. that the damages were deposited in the city treasury within a reasonable time; 2. that if otherwise, the reception of the damages, by the party, was a waiver of the objection, and a ratification by him of what had been done; consequently, that the order and warrant were not void, on account of such delay in depositing the damages.

Where the court of common council passed an order, directing that a street, previously laid out and established, be opened on a certain day; it was held not to be essential to the validity of such order, as against a party affected thereby, that he should have had notice to be present at the meeting at which it was passed.

Where a street had been laid out, by exact measure and definite bounds, and every building within its limits was specified and appraised, and these proceedings had been recorded; an order of the court of common council was passed, and a warrant was issued, predicated upon such proceedings, requiring the removal of all such buildings, and parts of buildings, from the street, at the expense of those persons respectively, whose duty it was to have removed them; it was held, 1. that such order and warrant were not void, by reason of their generality; 2. nor because the removal was to be effected at the expense of said persons.

The court of common council of the city of *Bridgeport,* has, under the charter and by-laws of the city, full authority over its streets, legally established, and opened; and it is the duty of that body to see that such streets are cleared of nuisances and obstructions.

THIS was an action of trespass *vi et armis*, with a count in trespass on the case, under the late statute, for tearing down and demolishing a wooden building belonging to the plaintiff, situated in *Water* street in the city of *Bridgeport*. The defendants severally pleaded *Not guilty*, with notice of special matter to be given in evidence by way of defence.

The cause was tried at *Fairfield*, *February* term, 1848, before *Ellsworth*, J.

*Water* street was legally laid out and established, by the court of common council of the city of *Bridgeport*, on the 2nd and 12th days of *January* 1846; and by a vote of the common council, passed on the 16th of *March*, was ordered to be opened by the 1st day of *April* following. Damages were assessed and deposited with the treasurer of the city, for the use of the persons injured, as directed by the charter of the city, a week or ten days before the 21st of *May* 1846. On the day last mentioned, the plaintiff called on the treasurer, and received from him the sum of 50 dollars, being the amount assessed to him, for damage to said building and premises, caused by the opening of *Water* street. On the 19th of *May*, the common council passed an order, that all the buildings, and parts of buildings, still standing in *Water* street, should be removed therefrom, by their owners, in fifteen days thereafter; which order was, on the following day, duly served on the plaintiff, he being the owner of one of those buildings. He neglected and refused to comply with such order; and the common council, on the 5th of *June*, ordered a warrant to issue, requiring those to whom it was directed, without delay, to remove such building from the street. This order was in the following words: "Whereas an order of this court was made, on the 19th of *May* 1846, directing, that all buildings, and parts of buildings, then standing on *Water* street, as laid out and altered by this court, on the 2nd and 12th days of *January* 1846, should be removed, by the proprietors thereof, within fifteen days from the date of said order; of which order, due notice has been given to said proprietors; and whereas said street, so laid out and altered, has been opened, and the damages caused by such laying-out and alterations, paid to the persons entitled to the same, or deposited in the city treasury, for their use respectively; and whereas, notwithstanding

*Fairfield,*
*July,* 1848.

Hawley
*v.*
Harrall.

*Fairfield,*
July, 1848.

Hawley
*v.*
Harrall.

such order, the proprietors of certain buildings, and parts of buildings, which, at the time of said laying-out, stood on such street, as laid out and altered as aforesaid, have suffered them to remain on said street, as they were at the time of such laying-out, until the present time, constituting an obstruction and nuisance to the same : Therefore, ordered, that a warrant issue, signed by the mayor, or one of the aldermen of the city, directed to either sheriff of the city, or an indifferent person, requiring him, without delay, to remove all such buildings, and parts of buildings, from said street, at the expense of those persons respectively whose duty it was to have removed the same, and make return of his doings, with an account of such expense, to the clerk of the city." By virtue of a warrant issued pursuant to such order, the defendants took down and removed the plaintiff's building. There was no direct evidence before the jury, that the plaintiff had any notice to be present, or was in fact present, when the orders of the 16th of *March*, the 19th of *May*, and the 5th of *June* were passed, except what may be inferred from the preceding statement.

The plaintiff thereupon insisted, that the warrant was not legally issued ; but the court did not, for that reason, reject it.

The plaintiff further claimed, and asked the court to instruct the jury, that under the charter of the city, and the first and second sections of a by-law of the city, approved the 10th of *January* 1837, the vote or order of the common council, passed the 5th of *June*, directing the warrant to issue, and the warrant issued thereon, were fatally bad, because the order of the 16th of *March*, to open the street, by the 1st of *April* following, was made, at that time, while the sum of 50 dollars, assessed to the plaintiff, and the other like assessments, were deposited with the treasurer, only a week or ten days before the 21st of *May* 1846.

The court held, that this did not invalidate the order for a warrant, nor the warrant itself.

The plaintiff further claimed, and asked the court to instruct the jury, that the warrant and vote of the 5th of *June*, were void, because they were too general and indefinite, in describing the buildings, and parts of buildings, to be removed from the street ; and also because such vote and warrant declare, that the buildings, and parts of buildings, to be removed, shall be removed *at the expense of the owners.*

The court did not so instruct the jury ; but held, that these objections did not invalidate the vote or warrant.

The plaintiff further introduced evidence to prove, and claimed he had proved, that before the 16th of *June* 1846, and on that day, he had taken, and was taking, timely and suitable measures for the removal of his building entire, out of said street, into a lot of one *Perry*, on the opposite side of the new street, which was well known to the defendants, and that there was no necessity or propriety in the defendants taking the building to pieces ; but they should, and could, if they were to do any thing, remove it entire : and further, that the defendants wantonly and maliciously took down the building : and that even if it was proper and necessary for them, under the existing circumstances, to take the building to pieces, they did it with too much violence and haste, and thereby unnecessarily injured and destroyed the materials, and became trespassers.

The defendants, on the other hand, denied the facts so claimed to be proved by the plaintiff, as to the time and manner of the removal of the building by them, and claimed they had proved the contrary thereof, and especially, that from the expiration of the time when the street was ordered to be opened, and when the building was ordered to be removed, in *May* 1846, it had been, and still was, entirely in the street, nearly filling it, and was a great hindrance to public travel and a nuisance ; that though, at one time, the plaintiff had placed rollers under it, he had never moved it, except four feet, leaving it still, as before, a nuisance, entirely in the street, without any reasonable cause for such delay ; that the time for the removal of the building having expired, before the date of the warrant, and long before the execution of it, on the 16th of *June* 1846, the plaintiff had done, and was doing, nothing, which showed his intention to remove the building, and certainly not within any reasonable time ; that the public needed the new street every day and hour, as one of the principal thorough-fares in the city, old *Water* street having been discontinued ; that the building was old, and of little value to be moved ; that its materials, at best, were too poor to be used in any building of much value ; that the defendants knew of no place, to which the building was to be, or could be, moved ; nor did they know, that the plaintiff

had any place in view ; that for a number of days previous to the 16th of *June,* neither the plaintiff, nor any agent of his, was about the building, to remove it ; and that the defendants, finding it in this situation, on the morning of the 16th of *June,* did, as the best and only thing which they could do, to remove the nuisance, employ twelve or fourteen men of skill and experience in removing buildings, to take down this building, in a judicious manner, doing no unnecessary injury, repeatedly cautioning the men to be careful ; and finally, that the defendants and their agents did not wantonly, or with any bad views, or with unnecessary violence or injury, take down the building, or carry off the materials, but did only what was prudent and necessary, in order to open the street for travel.

The court left these conflicting claims as to matters of fact, to the jury, for them to find according to the evidence ; remarking to them, that if the defendants, in executing the warrant, exceeded their authority, they would become trespassers, and liable to the plaintiff ; that the law required the defendants, in performing this duty, to act as prudent and judicious men would act, under the circumstances which the jury should find attended the transaction, as claimed by the parties respectively ; and if, in view of the evidence, they were satisfied, that the plaintiff had, before or on the 16th of *June,* taken, or was taking, timely and suitable measures for the removal of the building, which was known, or might, with reasonable care, have been known, to the defendants ; or that there was no necessity for taking down the building, because the defendants could have removed it entire ; or that the defendants had, wantonly and maliciously, taken it down, or with violence and haste, so as unnecessarily to injure and waste the materials ; the defendants were trespassers, as if they had no warrant ; but if the jury should find the facts, circumstances and manner, in executing the warrant, as claimed by the plaintiff, not to be true, but that they were as claimed to be by the defendants, then their verdict ought to be for the defendants.

There were parts of other buildings, beside this of the plaintiff, remaining in *Water* street, on the 16th of *June,* though such parts would not, and did not, greatly obstruct public travel ; and in consequence of this fact, that street

had not been in fact, and would not be, travelled, though it could be, and was once, travelled, after the building of the plaintiff was taken down, and carried off. The plaintiff thereupon claimed, and requested the court to instruct the jury, that the street was not, on the 16th of *June*, a highway; and that, therefore, the defendants had no right, under the common council, to remove said building; but that, if any one was to act in this matter, it should be the street commissioner.

The court did not so instruct the jury.

The jury returned a verdict for the defendants; and the plaintiff moved for a new trial.

The charter of the city of *Bridgeport*, printed with the private acts, (*p.* 354. & *seq.*) the 1st and 2nd sections of a by-law of the city, approved the 10th of *January* 1837, and the warrant under which the defendants acted, were embraced in the motion.

The only part of the charter material in this case, is the 38th section, the last sentence of which is in these words: " Provided always, that no highway, street, public walk, public avenue or public landing-place, so laid out or altered, shall be opened, until the damages assessed shall be paid to the person or persons entitled to receive them, or deposited in the city treasury, for his or their use."

The by-law referred to is entitled " A By-law relative to streets, highways and side-walks in the city of *Bridgeport.*" The 1st section declares, " That the erecting or setting up of any house, shop or building of any kind, or any part thereof, in or upon said highways or streets, &c., and the putting of any other incumbrance in and upon said highways, streets or side-walks, whereby the travelling or passing on the same shall be obstructed or rendered inconvenient, shall, each and every one of said acts, be deemed a nuisance." A penalty of 34 dollars is then inflicted upon every person guilty of the offence described. The 2nd section provides, " That it shall be the duty of the street commissioner for the city to take notice of all offences against this by-law, and give information thereof to the attorney for the city, that prosecutions may be had thereon; and said street commissioner shall warn and order each and every person, who shall do any of the acts, declared by this by-law, to be

a nuisance, to remove such nuisance, and repair the damages done thereby, within such reasonable time as said commissioner shall limit and appoint ; and if such person or persons shall not remove such nuisance, within the time so limited and appointed, by said commissioner, he or they shall incur the penalty, to the treasury of the city, equal to the penalty given by the by-law for creating such nuisance."

The warrant was directed to either sheriff of the city of *Bridgepoit,* or to *Isaac H. Whiting,* of said *Bridgeport,* [one of the defendants,] an indifferent person. It recited the orders of the common council of the 19th of *May,* and 5th of *June,* and then proceeded thus : "These are, therefore, by authority of the state of *Connecticut,* to command you, without delay, to remove all such buildings, and parts of buildings, from said *Water* street, in conformity with said order, and make due return of your doings thereon, as therein prescribed. Fail not. City of *Bridgeport, June* 6th 1846.
*Henry K. Harrall,* Mayor of the city of *Bridgeport."*

*Hawley,* in support of the motion, contended, 1. That the street was never legally opened. The charter explicitly provides, (*sect.* 38.) that no such street shall be opened, until the damages are paid or deposited. *Priv. Stat.* 362. The time limited expired on the 1st of *April* 1846. The damages were not deposited until the 11th of *May,* nor received by the plaintiff until the 21st of *May.* The order, therefore, never legally took effect ; and no new order was ever made to take effect after the deposit of the damages. *Reynolds* v. *Reynolds,* 15 *Conn. R.* 84. 100. There the efficacy of the order—its ultimately taking effect—was made to depend upon the payment or deposit of the damages. When did this street become open highway ? Not on the 1st of *April* ; for no damages had then been paid or deposited. Not on the 11th or 21st of *May ;* for then there was no subsisting order that it should be open—no order limiting a time within which it should be opened. According to the charge, the common council could make it highway, at any time, by the mere act of paying or depositing the damages, without any order limiting the time ; and this might as well be three or ten years after the 1st of *April* 1846, as in six weeks or two months. The powers of the common council

are *special*, and must be *strictly* pursued. *Starr* v. *Scott*, 8 *Conn. R.* 480. 483.

The plaintiff is not precluded from taking the exception, by his having received the money; for the payment of the damages had nothing to do with the opening of the street: it did not dispense with an order for opening.

2. That the orders of *March* 16th, *May* 19th and *June* 5th, were void, for want of notice. That of the 16th of *March*, directing the street to be opened by the 1st of *April*, could lay no foundation for a right to remove the plaintiff's property, without notice to him. In relation to the order of *May* 19th, directing the owners to remove their buildings within fifteen days, notice was especially necessary. They had a right to be heard in regard to their liability to remove, as to the reasonableness of the time, &c. Here is a *final* decree, subjecting the owners to the expense of removal, and without an opportunity to be heard in relation to the matter. The proceeding was *judicial* in its character. Facts were to be investigated and found, as the basis of the order. *Painter* v *Liverpool Oil Gas Light Company*, 3 *Ad. & Ell.* 433. (30 *E. C. L.* 131.) *Rathbun* v. *Miller*, 6 *Johns. R.* 281. *Kilburn* v. *Woodworth*, 5 *Johns. R.* 37. *Borden* v. *Fitch*, 15 *Johns. R.* 121. *Aldrich* v. *Kinney*, 4 *Conn. R.* 380. *Denison* v. *Hyde, Id.* 508. Notice was equally necessary as to the order of *June* 5th; for the parties had a right to be heard on the question whether the money had been paid or deposited, as to the causes of the omission to remove, &c.

3. That the order of *June* 5th and the warrant were void, for specifying nothing. No proprietor is named; no individual shown to be guilty of neglect or delay; no building in any way designated; every thing is left to be ascertained by the officer; and the warrant is, in its terms, absolute, and remedilessly final.

4. That the warrant was also void, for ordering the removal to be at the expense of the owners. The public cannot throw their own burthens upon individuals, without compensation.

5. That neither the charter, nor the by-law, justified the defendants; for they refer to nuisances erected or placed on a street already opened and fitted for public use—not

to obstructions previously on the ground taken for a street, and yet to be fitted for public use. *Drury* v. *Worcester*, 21 *Pick.* 44.

*Dutton* and *Loomis*, contra, contended, 1. That the order of the 5th of *June* 1846, and the warrant issued thereon, were legal and valid. In the first place, the charter authorises the common council to adopt all such measures, and make all such orders, and cause the same to be executed, as shall be necessary for appropriating the street to the purposes for which it was laid out. *Priv. Stat.* 361, 2. Secondly, the warrant was a necessary measure, and properly issued. There is no law or necessity, that requires it to be more specific. It leaves no discretion to the officer. All the cases where warrants have been decided to be invalid, in *Connecticut,* are cases where, among other defects, there was *no jurisdiction* apparent on the warrant. *Grumon* v. *Raymond,* 1 *Conn.R.* 40. *Starr* v. *Scott,* 8 *Conn. R.* 480. *Hall* v. *Howd,* 10 *Conn. R.* 514. *Prince* v. *Thomas,* 11 *Conn.R.* 472.

2. That it is no objection to this warrant, that it directed the officer to remove the buildings, *at the expense of the owners.* In the first place, this is the legal effect of the conduct of the plaintiff. But secondly, if not, this is no objection that the plaintiff can make here; this is no proceeding against him for the expense ; and does not, of itself, affect him in the least. Thirdly, the charter and by-laws authorise it. Fourthly, if there was any irregularity in the proceedings of the common council, prior to the order of the 5th of *June,* it is merely *formal,* producing no injury to the plaintiff, and has been waived by him, by his accepting his assessment.

3. That the charge is in conformity with law, and consistent with the rule in *Beardslee* v. *French,* 7 *Conn. R.* 125.

4. That the common council was a legally authorised and proper tribunal, from which the order to remove should issue. In the first place, the charter expressly authorises it. Secondly, the powers of the street commissioner do not conflict with the powers of the common council.

5. That if the charge was not strictly correct, still entire justice has been done ; and sufficient appears to show, that a new trial would produce no different result. *Johnson* v.

*Blackman,* 11 *Conn. R.* 358. *Selleck* v. *Sugar Hollow Turnpike Company,* 13 *Conn. R.* 453.

ELLSWORTH, J. It appears that *Water* street, in the city of *Bridgeport,* was laid out and established, in *January* 1846. The owners of property lying upon it, were notified and heard, and their respective damages were assessed, and soon after deposited with the treasurer of said city, in conformity to the provisions of the statute. Nothing remained but to direct, at what time the street should be opened. This was done, by an order of the 16th of *March* 1846, directing the street to be opened by the 1st day of *April* following. The damages assessed to individual proprietors, and among the rest, to this plaintiff, were deposited, as aforesaid, on or about the 1st of *May* 1846 ; and the plaintiff took his damages on the 21st of said month.

The first objection to the warrant, under which the defendants justify, and to the vote on which the warrant rests, is, that, at that time, to wit, the 5th of *June, Water* street did not exist, for the reason that the damages were not deposited in the treasury, for any of the proprietors, before the 11th of *May;* nor those belonging to the plaintiff, taken out, by him, before the 21st of *May;*—dates, as appears, subsequent to the 1st of *April,* at which time the street was to have been opened.

We think there is no force in this objection. It rests upon an assumption, to which we cannot yield assent, that the order of the 16th of *March,* was spent, by the mere lapse of time. We hold it was not spent, but was in force on the 11th and 21st of *May;* so that on those days, either the depositing of the damages with the treasurer of the city, or the reception of them, by the proprietors to whom they belonged, consummated all that was needful to perfect the laying-out of said street, or opening it for public travel. The statute does not say, at what time the sum due for damages shall be deposited in the treasury. It must be done before private property is taken ; and it was so done, in this case, as we think, within a reasonable time. Besides, had there been an unreasonable delay, the plaintiff cannot be allowed to insist upon the objection ; for by receiving the money, he has waived the objection, if it existed. Is he to be permitted

to hold the property, as if nothing had been done, and likewise, to retain the money, the equivalent of the property, as due to him for the injury suffered? He must have known, and must be held to have known, the supposed difficulty, when he took the money out of the treasury, so that his act can be construed to be nothing less than a ratification of what was done by the city, and his full consent to have *Water* street opened for public use. Were this a transaction between man and man, no one would question the justice and fairness of such a conclusion.

Again, it is said, that the order of the 16th of *March* is void, because the plaintiff was not notified to be present at the meeting of the court of common council. Where is the law that requires it? We know of none; nor has any been shown us. Nor is there any practice in our cities to sustain it. The proceeding of the 16th of *March* was not the laying-out of a street; nor preliminary measures to such an end; but an order for opening an existing street; and can not the city do this until they find who has left or placed obstructions in a street? No one whose property was taken, or to be taken, upon the payment of the damages assessed, has any ground of complaint, if he is paid, and has due notice at what time the city decide to exercise their rights.

It is further said, that the warrant of the 6th of *June*, and the vote on which it rests, of the 5th of *June*, are void, for their generality. It is said no individual delinquent is named; no buildings are specified; every thing is left to the discretion of the officer. We think there is no force in this objection. This street had been laid out, by exact measure and definite bounds. Every building situated within its limits, was specified and appraised; and this had become matter of record; and the said vote and warrant were predicated thereon. More definiteness, or more extended description, would be entirely useless and superfluous. The officer had no discretion; he is to clear out the street; all this he ought to do, and no more; and should he, in the execution of his warrant, exceed these limits, he becomes a trespasser.

It is objected, that the vote and warrant provide, that the removal ordered, shall be done at the expense of the author of the nuisance. Well, this is authorised by the charter of the city; a provision entirely constitutional, and founded in

the highest justice and fairness. The plaintiff has been paid for all the injury or loss which he might suffer, by the destruction or removal of this building ; and now, if he will not remove it, or take it down, if it is not worth removing, after he has had due notice, we think he cannot complain, that it is done by the authority of the law, at his expense. However, no such difficulty or objection exists, in point of fact. This provision in the warrant is, in strictness, no part of its executive character, delegating more authority to the officer than he would have without it. The plaintiff experiences no injury. If the provision is wrong, he will have an opportunity to object to it, when, if ever, the city of *Bridgeport* shall attempt to collect from him these expenses. In the meantime, this part of the warrant has no effect upon him, or any of his rights. The city pay the money, and the officer keeps an account of it, for any future proper and legal purpose.

Again, it is said, that the court of common council have not power to order nuisances to be removed from a street, circumstanced as this was ; but that this duty belonged to the street commissioner. We do not so consider it. We hold it to be the duty, and at the risk of the city, to see that its streets are clear of nuisances and obstructions. If this street was legally established and opened, as this objection assumes, then the court of common council had full authority over it, and have done no more than it was their duty to do.

We do not advise a new trial.

In this opinion the other Judges concurred.

New trial not to be granted.