NORMAN SKINNER *vs.* THE HARTFORD BRIDGE COMPANY.

The Hartford Bridge Company was incorporated in 1808, with power to construct a bridge across the Connecticut river and a causeway twenty feet high across the East Hartford meadows from the bridge. In 1810 an act was passed by the legislature requiring the company to pay damages to the owners of the land through which the causeway was laid, to be assessed by a committee named in the act, and requiring the causeway to be at least twenty feet high. The damages were assessed and paid, and the causeway was made of the prescribed height. In 1818 an act was passed authorizing the company to raise the causeway not exceeding three feet. In 1857 another act was passed authorizing them to raise it sufficiently high for the convenience of travel in times of flood. In 1858 an act was passed providing that the company should be holden to pay all damages that should be caused to any person by the raising of the causeway under the act of 1857. When this act was passed the company had begun and nearly completed the raising of the causeway, and they completed it after the act was passed. It was raised five feet, which was no higher than was necessary in view of the floods. Held, that the company were not liable to the owner of a dwelling house and lot adjoining the causeway, for the damage to his property from the raising of the causeway in 1857 and 1858.

The original assessment of damages was held to have covered all future damage resulting from any improvements on the causeway.

The act of 1858, if to be construed as requiring the payment of damages to the adjoining owners merely for the raising of the causeway, was of no effect; but it may be construed as applying to damages of a different character.

And whether, if otherwise of force, it could affect the company, when, under the authority of the prior act, they had begun and nearly completed the raising of the causeway before it was passed : *Quere.*

The act of 1810, which provided for the assessment of the original damages, was

passed on the 25th day of May. The committee named in the act made the assessment on the 27th of May, and on the same day made their report to the General Assembly which was accepted, and the Assembly adjourned on the 30th of May. Held, without deciding whether the act, under the law as it then was, took effect before the rising of the Assembly, that a party who had accepted the damages assessed in his favor, was estopped, as were also those deriving title from him, from denying the legality of the assessment.

As to the time when such acts, prior to our statutory provision on the subject, took effect : *Quere.*

ACTION on the case for damage caused to the plaintiff's property by the raising of a causeway by the defendants. The case was tried to the jury in the superior court on the general issue, with notice of the special matters of defense hereinafter stated.

The defendants were incorporated in the year 1808 with power to construct and maintain a bridge across the Connecticut River at Hartford, and a causeway extending eastward from the bridge through the East Hartford meadows, twenty feet in height above the ordinary level of the river in the month of August; and by a further resolution of the legislature in 1810, the defendants were required to pay damages, to be assessed by a committee named in the resolution, to the owners of the lands through which the road and causeway were laid, and to make the causeway " at least twenty feet high." The resolve of 1810 was passed on the 25th day of May, the committee made their assessment of the damages on the 27th of the same month, and made their report to the legislature on the same day, which was accepted, and on the 30th of May the legislature adjourned. The land now held by the plaintiff was a part of the land the damage to which was estimated by the committee, and the damages so assessed were paid to and accepted by the then owner of the land. The bridge and causeway were soon after built, the latter being raised to the height required by the act of incorporation. In 1818 a further resolve was passed, granting certain privileges to the company and imposing certain burdens, and containing the following provision with regard to the further raising of the causeway :—" and the causeway shall be raised to the acceptance of said commissioners, not to exceed three feet

higher than it now is." The causeway was immediately after raised to the height mentioned. In 1857 a further resolution was passed by the legislature in the following words:—" That liberty be and the same is hereby granted to the Hartford Bridge Company to raise their causeway in East Hartford, leading east from the bridge over Connecticut river at Hartford, sufficiently high for purposes of travel in times of flood, and to a level above high water freshets, and that in the raising of the same not less than 250 feet of additional bridging shall be constructed to admit the passage of water in times of flood." And in 1858 the following resolution was passed:— " Whereas the General Assembly of this state, at its May session 1857, by resolution granted leave to the Hartford Bridge Company to raise their causeway in East Hartford sufficiently high for travel in time of flood, and no provision was made in said resolution for the payment of damages which will be caused by the raising of said causeway, therefore be it resolved by this Assembly, that the Hartford Bridge Company shall be holden to pay all damages that may arise to any person or persons in consequence of the raising of said causeway by said company, pursuant to leave granted them by said resolution." The causeway was originally laid over meadows that were annually overflowed by the river, and which were not then used for building purposes ; but since the construction of the causeway, dwellings and other buildings had been erected on the adjoining lands, and streets had been laid out which connected with it, and it had been used as an open thoroughfare for all purposes like any other street.

The plaintiff offered evidence to prove, that he was the grantee of one of the original proprietors of the lands through which the causeway was built, and had owned and occupied the land for forty years ; that he had two dwelling houses standing on the land, the last built more than twenty-five years ago, adjoining and very near the causeway, to which dwellings he had access from the causeway ; that in 1858 the defendants raised the causeway in front of the houses about five feet ; that the causeway so raised was five and a half feet above the front of his premises, and eight feet above the rear,

and only six inches below the window sills of the first story of the dwelling house which he occupied; that by means thereof the house was rendered very difficult of access from the causeway, and his family subjected to great annoyance from the darkening of the windows, and from dust and dirt and the flow of water from the causeway, and by reason thereof the whole property was greatly depreciated in value; and he claimed that the raising of the causeway was unauthorized and illegal, on the ground that the height of it was limited by the acts of 1808 and 1818 to twenty-three feet, and the act of 1857 had never been accepted by the company as required by the statute in the case of amendments of the charters of corporations, and therefore furnished them no authority or protection, or, if authorized and legal, that he was entitled to recover damages under the resolution of 1858. It was admitted that the act of 1857 had never been accepted by a vote of the defendants; that the causeway, which was originally erected at an elevation of about twenty feet above low water mark, was raised three feet higher under the act of 1818, and about five feet higher in 1857 and 1858; and it was shown that it was not now higher, and had not at any time been raised higher, than the great floods of 1801 and 1854. The defendants claimed, and offered evidence to prove, that the raising of the causeway in 1857 and 1858 was not desired by them, and subjected them to great expense, but was required by the public, and as a matter of public convenience and necessity; that the act of 1857 was not passed upon their petition or request, but at the instance of those having a public interest in having the causeway elevated above the freshets; that soon after the passage of the act, and within six months, and within a reasonable time, they commenced contracting for and getting their materials for the work; that they commenced the work in the fall of 1857, and progressed with all reasonable dispatch; that they recommenced it in the spring of 1858, and at the time of the passage of the act had nearly completed the work of raising the causeway, and had contracted for the finishing of the same; that some portion of the work in front of the premises of the plaintiff had been done

Skinner *v.* Hartford Bridge Company.

before, but that the whole was not completed till after the passage of the resolve ; and that the raising of the causeway was a great public benefit.   They also offered evidence to show, and it was not denied, that the damages assessed under the act of 1810 were paid to the proprietor of the land now held by the plaintiff.

The plaintiff requested the court to instruct the jury, that the company were limited by the act of 1808 to an elevation of twenty feet ; that the act of 1810 did not take effect till after the legislature adjourned, and after the assessment was made ; that the assessment contemplated an elevation of twenty feet and no more, and did not any further conclude the then owner of the plaintiff's premises nor the plaintiff ; that the act of 1818 did not authorize an additional elevation of more than three feet ; that the act of 1857, never having been accepted by the company, conferred no power upon the defendants to raise the causeway, and that, if it did, the act of 1858 made the defendants liable for damages of the character complained of, and that therefore, if the jury found the injuries proved, the plaintiff was entitled to recover.   The defendants claimed that the legislature having by the act of 1810 provided for the payment of damages and appointed commissioners to assess the same, and the commissioners having reported to the legislature their doings, and their report having been accepted and the damages paid, the assessment was legal and perfect, and binding upon the grantors of the plaintiff and upon him, and that the defendants had a right thereafter to build, raise, and repair the causeway, in any manner that public convenience and necessity should require, unless prohibited by the legislature ; that a formal acceptance of the resolution of 1857 was not necessary, and that it was sufficient that they went on immediately to do the acts authorized ; that the act of 1858 was not intended to apply to injuries like those complained of by the plaintiff, and that, if such was the intent of the legislature, the resolve was unconstitutional ; and requested the court so to charge the jury.

The court instructed the jury that the assessment, after the payment and receipt of the money, was valid and binding on

the then owner of the property, and the plaintiff as his grantee; that the assessment was not to be construed as limited by the contemplated elevation of twenty feet, but as covering the con tingencies of future legislation and public necessity, and that under it the defendants were authorized to increase the elevation to any extent required by public convenience and necessity, unless restrained by the controlling authority of the legislature; that a formal acceptance of the act of 1857 was not necessary, and that, if the jury found that the defendants went on under it, and within six months from its passage, to contract for and commence the work, and further proceeded with and completed it as claimed, and in so doing acted reasonably and in good faith, and did not go beyond the requirements of public convenience and necessity, they were justified; that as it appeared from the evidence, and was not denied, that this causeway had become a public highway, and had been for more than thirty years built upon and used as such by the plaintiff and others, and for all purposes of public travel, in the opinion of the court the resolution of 1858 ought not to be construed as extending to the injuries claimed to have been done to the plaintiff's premises, and the defendants, being bound to maintain and repair the highway, might lawfully raise it, if they acted reasonably and in good faith, to any elevation which the public convenience and necessity required, without being liable, under that resolve, to the plaintiff; and submitted to the jury the question whether, in so raising the causeway, the defendants had acted in good faith, and reasonably, and had not gone beyond what public convenience and necessity required.

The jury returned a verdict for the defendants, and the plaintiff moved for a new trial.

*M. Welles* and *Hubbard,* in support of the motion.

1. The assessment of damages under the act of 1810, if legal, yet covered only the damage from the raising of the causeway to the height prescribed by the charter. The court below held that it covered all future damage resulting from any raising of the causeway whatever. But the committee in

assessing the damages can not be presumed to have taken into consideration a fact which then had no existence and which could not have been anticipated. It would have been a wrong to the bridge company to have increased the assessment in view of a state of things which was merely possible and which no one expected. It is absurd to say that the elevation of the grade was not a matter affecting the damages. It is said however that the original grant conferred the right to raise the causeway to any height which the company might think proper, and that the committee made their estimate in view of this power. But the act of 1808 authorized the company to raise it only twenty feet, and though the act of 1810 uses the expression " at least twenty feet," yet the two are to be taken together, and are to be understood as intending to require as well as authorize merely that elevation. This construction has been given to the grant, both by the legislature and the company, in the express authority that has been given in every case where they have since raised the causeway.

2. But the assesment of damages under the act of 1810 was not a legal one, because that act had not taken effect at the time the assessment was made. That act did not take effect until the rising of the General Assembly. *Wooster* v. *Parsons*, Kirby, 30. 1 Swift Dig., 11. 1 Kent Com., 457. 1 Steph. Com., 4th ed., 73. Dwarris on Stat., 472. Sedgw. on Const. Law, 82. *Ship Cotton Planter*, 1 Paine, 23. That act is a public act. *East Hartford* v. *Hartford Bridge Co.*, 10 How., 534. Sedgw. on Const. Law, 32. *Burnham* v. *Webster*, 5 Mass., 268. *Commonwealth* v. *Springfield*, 7 id., 9, 12. *Pierce* v. *Kimball*, 9 Greenl., 54. *Douglass* v. *Bank of Missouri*, 1 Mo., 24. *Bank of Utica* v. *Smedes*, 3 Cowen, 662. *Bass* v. *Fontleroy*, 11 Texas, 698, 705. *Mills* v. *St. Clair Co.*, 8 How., 569, 581. The acceptance of the report of the committee by the same General Assembly can not give the act an earlier operation than it would otherwise have had. Sedgw. on Const. Law, 339. *Bradley* v. *N. York & N. Haven R. R. Co.*, 21 Conn., 294, 306. *Penn. R. R. Co.* v. *Canal Commissioners*, 21 Penn., 9, 22. If the then owner of the land, by accepting the assessment, precluded himself and those

deriving title from him from denying the validity of the laying out of the causeway, yet no further effect will be given to his act, and it will not be held that he precluded himself from claiming damages for all future increase of the height of the causeway, when such increase could not have been in fact taken into consideration by the committee. It can be only a fiction of law that such possible future damage was considered, and a fiction of law is not allowed to work an injury against the actual fact.

3. Whatever authority was given to the company by the acts of 1808 and 1810, to raise the causeway at their discretion, was subject to the control of the legislature, and was restained and limited by the act of 1818. By that act the company were authorized to raise the causeway "not to exceed three feet." When therefore in 1857 authority was given to the company to raise it still higher, it was a new power, not possessed independently of the act. The act of 1858 qualifies the power given the year before, and is to be taken in connection with that act, the two together constituting properly one act. The company can not therefore avail itself of the authority conferred by the act of 1857, without accepting also the qualifications and conditions annexed to it by the act of 1858. They had no authority, therefore, to raise the causeway, with-out paying "all damages that might arise to any person" therefrom. It is claimed by the defendants, and was held by the court below, that the damages here intended are not damages to the adjoining owners, but damages for personal injuries. But the company would be liable at common law for all such damage, and it is absurd to suppose that a special act would be passed for such a purpose. No damage can reasonably be supposed to have been intended but precisely such as the plaintiff is here complaining of.

4. But the act of 1857, from which alone the defendants derive their authority to raise the causeway, can not avail them, because it was not accepted by them as required by the stat-ute. The statute (Rev. Stat., tit. 3, § 165,) provides that all amendments of the charters of corporations, if not otherwise specially provided, shall not become operative unless accepted

by the corporation within six months.   Here it is found that the company did not accept the act by vote, and clearly they did not at all unless their going on with their preparations for raising the causeway was an acceptance.   But such an acceptance can never have been intended by the statute, and nothing less than a formal acceptance by a corporate vote can be sufficient.   This neglect of the company to accept the act rendered all their proceedings under it illegal, and, if made legal, they are so only by the act of 1858 which requires the payment of damages.   The defendants can not claim that the act of 1858 legalized their proceedings and yet that they are not bound by the conditions which it imposed.

*F. Parsons* and *T. C. Perkins,* contra.

1. The assessment of damages under the act of 1810 covered the damage now claimed by the plaintiff.   That assessment was for the land taken and all the injury resulting from its appropriation as a public highway.   The character of the highway was of course considered by the committee in making the assessment, and the contingency of alterations in the grade.   *Imlay* v. *Union Branch R. R. Co.,* 26 Conn., 249. *State* v. *Maine,* 27 Conn., 641.   The causeway in this respect stands on no other ground than a common turnpike road or highway, any alteration of the grade of which, for the purpose of better accommodating the public, is not regarded as an injury to the adjoining owner, and does not entitle him to additional damages.   This is the more clear in this case because the act of 1810 requires only that the causeway be *not less* than twenty feet high, and does not limit the company to that height.

2. The assessment of damages under the act of 1810 was operative and legal, and conclusive on the plaintiff.   That resolve took effect from the time of its passage.   In England the rule formerly was, that an act of parliament took effect from the first day of the session if no day was named.   *Latless* v. *Holmes,* 4 T. R., 660.   *Rex* v. *Gall,* 1 Ld. Raym'd, 370. So of proceedings in court.   But evidence is admitted to fix the real time whenever this fiction will interfere with justice.

*Morris* v. *Pugh*, 3 Burr., 1241, 3. So far was this fiction carried as to legislative acts, that in *Rex* v. *Thurston*, 1 Lev., 91, the life of one accused of murder was only saved by a pardon. 1 Gall., 65. To correct this evil, the statute 33 George III was passed, fixing the time of the royal assent as the time when a statute should take effect. 6 Bac. Abr., tit. *Statute*, C. In the United States' courts, a statute is held to take effect from its date or passage. *Brig Ann*, 1 Gall., 66. *Mathews* v. *Lane*, 7 Wheat., 164, 211. 1 Kent Com., 454. *Warren Manufacturing Co.* v. *Ætna Ins. Co.*, 2 Paine, 501. In North Carolina acts take effect from the first day of the session. In Indiana, from publication. In Illinois, Alabama, Georgia and Iowa, from their passage. See U. S. Digest, title *Statutes*. See also *Clarke* v. *Rochester*, 24 Barb., 446, where it was held that an act of incorporation took effect from its passage, though the acceptance of part of it by the city council was necessary for its full operation. It appears therefore that there is no universal rule as to the time when public acts go into operation, but that the English statute and the great majority of American authorities date the operation of an act from its passage or approval. In our own state the date when public acts take effect was fixed by statute in 1821. *Perkins* v. *Perkins*, 7 Conn., 565. Rev. Stat., tit. 23, § 5. But there is a material distinction between public and private acts. 1 Kent Com., 459. And our statute necessarily implies that there is a different rule as to private acts. Further, the constitution of Connecticut, (Art. 3, sect. 1,) directs that the style of the laws shall be—" Be it enacted, &c," yet the Assembly styles private acts, wholly in disregard of the constitutional provision, " Resolved by this Assembly." The act of 1851, to remove any possible doubt as to private acts, expressly directs that they shall take effect when approved. But this is only confirmatory of the usage and common law of the state, for in private matters, if both houses concur, a bill in form passes into a resolve, and establishes the grant. 1 Swift System, 82. In *Wooster* v. *Parsons*, Kirby, 27, three judges held that laws were not in force until the rising of the Assembly. To this doctrine Law, C. J. and Ellsworth, J., assented so far

Skinner *v.* Hartford Bridge Company.

as it applied to a penal or mandatory act, but held that a grant took effect immediately. The act incorporating the Academy of Arts and Sciences, passed in 1799, was passed at the October session, and it provides that the first meeting of the corporation should be holden on the 4th Tuesday of that month and while the legislature was still in session. If however the act of 1810 did not take effect technically from its passage, the report of the committee making the assessment was returned to and accepted by the same session of the Assembly. This is decisive as to the effect of the act in this particular case. But even if the assessment was not regular and legal, yet as the plaintiff's grantor accepted the damages assessed, the plaintiff is estopped from denying the legality of the assessment. The plaintiff stands on the same ground with the original owner, who clearly could not retain the damages paid him and yet deny that they were regularly assessed. *Whittlesey* v. *Hartford, Providence & Fishkill R. R. Co.*, 23 Conn., 422.

3. It was not necessary that the act of 1857 should be accepted by the defendants. It was not in form an amendment of their charter, and was not so entitled. It was not passed upon the application of the defendants. It merely operated as a repeal of the prohibition imposed by the legislature itself in 1818. It was merely a revocation of a disability and a restoration of the company to its former privileges. The legislature had the right to repeal their former limitation, whether the defendants wished it or not; their accepting or refusing to accept could make no difference. Besides, if an acceptance was necessary, the court below was right in holding that the act of the company in going on to raise the causeway within six months after the passage of the act was a sufficient acceptance. The defendants however claim that they had already sufficient authority in their charter to raise the causeway to any height that might be necessary. Their charter is a close one, and the powers given by it could not be taken away without their consent. Church, J., in *Hartford Bridge Co.* v. *East Hartford*, 16 Conn., 174.

4. The act of 1858 was of no effect against the defendants. If, as we claim, the defendants had already paid full legal

damages to the owners of the land, they clearly could not be compelled by an act of the legislature to pay them again or to make any additional compensation. But the act is void, so far as the action of the defendants in raising the causeway is concerned, as retroactive. They had gone on and done a considerable part of the work before the passage of the act, and having undertaken it they were authorized to complete it. The act is therefore to be treated as if it was passed after the whole work was completed. In this view it is retroactive in its intention and so far void. Storrs, C. J., in *Bristol Manufacturing Co.* v. *Gridley*, 28 Conn., 612. *Falconer* v. *Campbell*, 2 McLean, 195. *Coosa River Steamboat Co.* v. *Barclay*, 30 Ala., 127. *Medford* v. *Learned*, 16 Mass., 215, 217. *Kennebec Purchase* v. *Laboree*, 2 Greenl., 275. *Austin* v. *Stevens*, 24 Maine, 520. *Coffin* v. *Rich*, 45 id., 507. So far as it can be regarded as operative it applies only to personal injuries, or perhaps to damages caused to land owners by the setting back of the water of the river by means of the increased height of the causeway, and not to damage to the adjoining land owners. Such a construction is to be given to an ,act as will make it valid, if it will admit of it.

ELLSWORTH, J. In 1808 the legislature chartered the defendants to build a bridge over , Connecticut river, and a causeway through the East Hartford meadows. In 1810 the legislature passed an act providing for the assessment, by a committee named, of damages to land proprietors. This assessment was immediately made by the committee, who also made their report to the same legislature, which was approved and accepted. These land damages were at once paid to and accepted by the persons in whose favor they had been assessed, and among them was the person under whom the plaintiff holds the land in question.

The legislature directed in the charter that the causeway should be raised at least twenty feet, which was done to the acceptance of the committee. From that time to the present, now more than fifty years, this causeway has been treated and used by the public, without objection, as a public highway.

We think it now quite too late, if it ever could have been done, to call in question the legality of the laying out of the causeway, upon the ground that the act providing for the assessment of damages, which was essential to the legality of the proceeding, had not taken effect by the rising of the General Assembly at the time when the assessment was made. It is contended by the plaintiff that, as the law then stood, acts of the legislature took effect only at the final adjournment of that body, where it was not otherwise expressly provided, and that consequently there was no act in force authorizing the assessment and the taking of the land, when the assessment was made and the land taken. We think this altogether too great a refinement for the settlement of a practical question like this. It is not perhaps entirely clear at what time, independently of statutory provision, (and there was none in Connecticut at the time in question,) a general law, or private grant and resolution of the General Assembly, should be held to take effect, whether from the first day of the session, as perhaps is the common law, or from the approval of the act by the executive, or from the rising of the Assembly. Questions over nice and curious on the subject have been made in the cases, and some decisions have been read in the argument, especially with regard to the taking effect of criminal laws, which seem to me to confound all distinction between guilt and innocence, and which have been confessedly so unjust in their operation as to call for executive interference. In most states these questions are no longer open for discussion, the time for the law to take effect being fixed, as it now is with us, by statute. We are very willing therefore to pass over the whole discussion without expressing an opinion on the subject, as we are at liberty to do, since the case does not require a decision of the question. The damages, whether legally assessed or not, were in fact assessed in favor of the plaintiff's grantor, and were accepted by him as damages for the land taken; and the causeway thus laid out and paid for has been ever since treated and held, without objection from any quarter, as a public highway. In these circumstances the plaintiff is clearly estopped from calling in question the validity of the proceedings

under which the causeway was laid out and the damages assessed and paid. This doctrine of estoppel has often been before the court, and has been applied by us in cases presenting defects and irregularities more serious and questionable than any suggested in this cause. We refer particularly to the cases of *Hawley* v. *Harrall*, 19 Conn., 142, *Whittlesey* v. *Hartford, Providence & Fishkill R. R. Co.*, 23 id., 421, and *Hitchcock* v. *Danbury & Norwalk R. R. Co.*, 25 id., 516.

We will only add that the legal presumption is that damages were assessed in this instance for a causeway of any height which the public convenience should require, and not for one of any particular height, as claimed by the plaintiff's counsel ; nor could its exact height, whether a little more or less, be material in the assessment of damages for the land taken.

The plaintiff's case does not seem to rest so much upon this claim for land damages, as upon a claim for damage caused by the subsequent raising of the causeway beyond the height originally required. This it is which, as he alleges in his declaration, has put him to great inconvenience, obstructed his passage to and from his dwelling house, darkened his windows, and subjected him to increased dust and drainage of water from the causeway, and generally has made his dwelling-house less comfortable and convenient as a habitation.

Now the court submitted to the jury the question whether the defendants, in what they had done, had conducted fairly and reasonably; for, if they had not, certainly they were liable; and the jury found that they had, and that public convenience and necessity justified and required the raising of the causeway in the manner in which it was done. This being established, it is not easy to see on what principle of law or public policy the defendants can be made liable for the natural consequences of the act; for it will not be contended that persons living on a highway can sue the officers of the government for the damage, no matter how real, which may result from a necessary change in the grade of the road ; and these defendants are clothed with like powers in relation to this causeway under the provisions of their charter. A contrary doctrine, such as the plaintiff must adopt if he will maintain his case,

would arrest not a little the work on highways however essential to their usefulness, for it is scarcely possible but that somebody can show that he has sustained some kind of damage or inconvenience from every material alteration of a road. No such doctrine can be admitted. Every man when he builds upon land adjoining the highway does so at the risk of changes in its grade, and well knows this, and places his house higher or lower in view of it, judging as well as he can as to the probabilities of any such change. How absurd then would it be if the plaintiff, by building on the line of the causeway, could thereby control the grade of it to suit his convenience without regard to that of the public. It is not for the plaintiff to determine when and in what manner the road may be altered, lest it should be made more dusty, muddy or otherwise uncomfortable to him. Upon this topic we refer to the cases of *The Governor &c.* v. *Meredith,* 4 T. R., 794, *Noyes* v. *Ward,* 19 Conn., 250, and *Hooker* v. *The N. Haven & Northampton Co.,* 14 id., 147, and to the numerous cases cited by Williams and Sherman, Js., in their opinions in the latter case.

In our view of this case, the resolve of 1858 presents the only ground of doubt as to the right of the defendants to raise their causeway in the manner they have done. Possibly this resolve may be construed so as to reach this case, and yet we should give it this construction with extreme reluctance, for we are persuaded that it would be to the prejudice of the public, as well as in violation of the rights of the defendants, who have a close charter which is unrestricted as to the height of the causeway, except that it must be at least twenty feet. If by reason of high water the public travel requires that it should be higher than twenty feet, and the defendants are willing to meet this want, and raise the causeway at their own expense, we know not why it may not and ought not to be done. Certainly the plaintiff has no ground of complaint, as his damages (if indeed there be any,) are not, as we think, of the character contemplated by the resolve of 1858.

Besides, the resolve purports to take away only what was given by the resolve of 1857 ; but the defendants do not admit

that they derive the right to raise the causeway from that resolve. They claim the right under their charter, which is a close one, and insist that this right could not be taken from them. The resolve of 1857 was not passed at their request, nor have they accepted it; and they insist that they are not under the necessity of claiming any thing under it. They further insist that if the resolve of 1858 is to be held as taking away the license of the resolve of 1857, then they had substantially done the work complained of before the former resolve was passed, and therefore can not justly or constitutionally be affected by the repeal of it. We are inclined to regard this claim as having some force, and under other circumstances we should feel called upon to give it much consideration; but we place our decision on the other ground already stated, being satisfied that the resolve of 1858 was not intended to embrace damages such as are now sued for. We are inclined to think that the framers of the resolution had in view damages caused by back water from increasing the height of the causeway. At all events, they did not, we think, mean to touch the remote and incidental damages complained of in this action.

We do not advise a new trial.

In this opinion the other judges concurred.

New trial not advised.