MARY RAKOWSKY *vs.* CITY OF DULUTH.

July 22, 1890.

City of Duluth—Power to Change Grade Lines of Streets.—That part of section 3 of chapter 4 of the charter of the city of Duluth (Sp. Laws 1887, *c.* 2) which refers to the establishment of a system of gradation for streets, avenues, and alleys, and to a change of gradient lines, construed. *Held,* that the municipal authorities of the city have the power to change grade lines theretofore established and fixed by the authorities of its predecessor, the village of Duluth.

Action brought in the district court for St. Louis county, to recover $2,300 for injuries to plaintiff's lot resulting from a change of grade of the street in front of it. At the trial, before *Stearns,* J., a dismissal was ordered at the close of the evidence for plaintiff. A new trial was refused, and the plaintiff appealed.

*Edson & Hanks,* for appellant.

*S. D. Allen,* for respondent.

COLLINS, J. In the year 1883 the council of the then village of Duluth established a grade line for Superior street, on which appellant's lots were located, and thereafter the street in front of said lots, upon which she had erected a building, was properly graded. In 1887, the village having been absorbed by the incorporation of the city in the mean time, the grade line as established by the village was changed and lowered about two feet by the city authorities in front of appellant's premises. The street having been brought to the re-established grade line, appellant commenced this action to recover damages. If there existed no statutory prohibition, it is conceded that the act of the city authorities in changing and re-establishing the grade line, and their further action whereby the street was actually lowered two feet in front of appellant's lots, was lawful, and that she cannot recover; for the owner of property adjacent to a public street is not entitled to a remedy for injuries resulting from the exercise, in a proper manner, of lawful authority in establishing or changing the grade of a street. *Henderson* v. *City of Minneapolis,*

32 Minn. 319, (20 N: W. Rep. 322.)   It is the contention of the appellant, however, that the inhibition is found in the respondent's charter, and that the municipal authorities were expressly prohibited by the terms of section 3, c. 4, of the constituent act, (Sp. Laws 1887, c. 2,) from altering or changing a grade line previously established by the village council.

The section in question, which we are required to construe and on which appellant's case depends, reads as follows: "Sec. 3. Said board shall, subject to the approval of the common council, establish a system of grades for all streets, avenues, and alleys within said corporate limits, for which grades have not been heretofore established; and when once established no grade shall be changed except by resolution of the common council, passed by a two-thirds vote of all the aldermen.   Said board shall establish a system of sewers for the entire city, and cause to be designated on said plats the streets, avenues, and alleys through which the same are to be constructed; the same to be done in such manner so as not to conflict with or change the sewers which are already established, laid out, and in operation; and no streets shall be paved until the sewer to be constructed through the same shall be completed so far as the pavement is to extend."   (Sp. Laws 1887, p. 69.)   The claim is that by using the words, "for which grades have not been heretofore established," when empowering the board of public works to establish a system of gradation for the streets of the city, it was the intent of the legislature to unconditionally deprive the authorities of the power, then undisputed, of changing at will the previously adopted gradient lines. In other words, that by this enactment it was designed to perpetually restrain the corporation from further action in respect to the grade of a portion of its streets, no matter how pressing the needs of the public, nor how desirable an alteration might be to the abutting owners.

Should the views of the appellant's counsel obtain, it would follow that under no circumstances could the grade lines of certain streets in the municipality be interfered with.   The city might be prepared to compensate those whose property would be injured by the change, or the owners of adjacent premises might be ready and anxious to

release all claims for damage, but the authorities would be powerless in either case. The restriction, if it exists at all, is absolute and unqualified. Furthermore, we should find the city authorized to change a *system* of gradation of its own creation, again and again, but unable to alter gradient lines established by the village, perhaps without regard to a system. And the inhibition would also prevent the re-establishment of grades upon streets where, although the lines had been fixed, no work had been done by the officials, or structures erected by the lot-owners, with reference to such lines. An examination of the adjudicated cases will show that it has not been the tendency of the courts to abridge or restrict the powers and authority of municipal corporations over the streets and public ways within their limits. *State* v. *Mayor, etc., of Morristown*, 33 N. J. Law, 57; *City of Philadelphia* v. *Philadelphia & Reading R. Co.*, 58 Pa. St. 253; *City of Hannibal* v. *Hannibal & St. Joseph R. Co.*, 49 Mo. 480; *Attorney General* v. *Boston*, 142 Mass. 200, (7 N. E. Rep. 722;) *Hawley* v. *Harrall*, 19 Conn. 142; *Korah* v. *City of Ottawa*, 32 Ill. 121; *Laconia* v. *Gilman*, 55 N. H. 127. We are confident that the language relied upon by appellant should not be construed as if standing alone, but must be read with the balance of section 3, and with an effort to discover what was meant by those who enacted this law. To warrant us in adopting the appellant's construction, the purpose and design of the law-makers should not rest in doubt and uncertainty. The right of the city of Duluth to change and re-establish gradient lines, or its system of gradation, on all of its streets or public ways, is recognized, regulated, and fixed by that part of the first paragraph of section 3 immediately following the words we have hereinbefore quoted. In this instance the statute was complied with, and the grade properly re-established. In conclusion it may be said that the intent of the legislature in this matter is made the more apparent when we observe the care taken, further on in the same section, to restrict the authorities in regard to the establishment of a system of sewers. Here, and upon this subject, the language used is clear and unambiguous.

Order affirmed.