## IRA GREGORY vs. THE CITY OF BRIDGEPORT.

The charter of the city of Bridgeport gives the common council power to lay out streets and provides for a notice to and hearing of all parties interested in any proposed lay-out. It then provides that if, after such a hearing, the council shall resolve to lay out the street, it shall appoint a committee, whose duty it shall be to make such lay-out and report their doings to the council, with a survey and particular description of the street laid out. Held that a standing committee on streets and sidewalks was not a proper committee to refer such a matter to under this provision of the charter.

The standing committee, to whom a petition for the widening of a street was referred immediately on its being presented and without any hearing on the part of the council, reported that they advised that the council order the widening of the street in accordance with a survey accompanying the report, and the council so ordered. Held that, even if the committee had been the proper one, the proceeding was not in accordance with the requirements of the charter, and that an assessment of benefits founded upon it was void.

[Argued March 20th—decided July 16th, 1884.]

APPLICATION for relief from an assessment of benefits from the widening of a street in the defendant city; brought to the Court of Common Pleas. Facts found and case reserved for advice. The case is sufficiently stated in the opinion.

*R. E. De Forest* and *D. Davenport*, for the plaintiff.

*C. Thompson* and *C. Sherwood*, for the defendants.

PARK, C. J.   The question in this case grows out of the provisions of the charter of the city of Bridgeport relating to the laying out of streets and highways within the city. The 31st section of the charter gives the common council authority, as they shall judge needful, to lay out new highways, and other public improvements and alterations of the same.   The 32d section provides for notice to all parties interested and a hearing upon any proposed improvement. The 33d section, upon which the question in the present case arises, is as follows :   " If after such hearing the common council shall resolve to lay out, alter, extend, enlarge, discontinue or exchange such street, highway, walk, avenue, park or landing place, they shall appoint a committee whose duty it shall be to make such lay-out or alteration, and who shall report in writing their doings to said common council, which report shall embody a survey and particular description of such street, highway, walk, avenue, park or landing place, or alteration thereof."

The common council was elected annually, and one of its rules was the following :   " All standing and all special committees to report, shall be appointed by the chair, said appointments to be announced during the session of the common council.   The first person named on said committee shall be chairman."

In pursuance of this rule, in the month of April, 1881, and near the commencement of the official term of the council, certain members of that body were appointed " a standing committee on streets and sidewalks."

When the petition in this case for the widening of a highway was presented to the common council, that body immediately referred it to the committee on streets and sidewalks.   This was on the 5th day of September, 1881. Subsequently, on the 3d day of October of the same year, on the recommendation of this committee, the common council decided to widen the street prayed for in accordance with the recommendation and survey presented by the committee.

No subsequent action was taken by any committee in

regard to the laying out of the widened part of the street in accordance with the decision, nor was any special committee appointed for the purpose. The recommendation of the committee on streets and sidewalks was as follows: " The committee on streets and sidewalks beg leave to report concerning the widening of the approach to the lower bridge, and recommend the adoption of the following resolutions: *Resolved*—That the widening of the western approach to the lower bridge, from the present south line of the street approaching the bridge, extending along the harbor seventy feet south, on a line with the present wharf, and extending from the wharf westerly to the railroad, according to a map and survey thereof made by the city surveyor and submitted herewith, be accepted and approved, and the same be and become, after the final settlement of assessments, a part of the highway thereto. *Resolved*—That the mayor appoint a special committee of three judicious and disinterested freeholders, to estimate and appraise the benefits or damages, as the case may be, accruing or resulting to any person or persons from said widening."

There is nothing here which purports, even, that the committee had laid out the widened part of the street; and if there was, it would be a laying out before there was anything to lay out,—before there was any decision by the common council that the street should be widened. Obviously the report is nothing more than a recommendation to the council that the widening should be made in accordance with the map and survey submitted.

Again, it does not appear that the matter was ever submitted to the committee on streets and sidewalks for the purpose of having the widening laid out. All that was done occurred on the evening the petition was presented to the council. The petition was immediately referred to the committee. Referred for what purpose? To lay out the proposed widening before there had been any hearing by the council of the parties in interest on the question whether the widening should be made? That would be

entirely irregular.  Obviously it was referred to the committee for them to examine the matter and report what in their judgment should be done.  The committee so understood it; for the same evening they reported a resolution that the council hear the parties in interest on the nineteenth instant, and the council so resolved.  Subsequently they reported that the council should order the widening to be made according to the map and survey which they presented, and the council so ordered.  Indeed, the name of the committee implies that they were appointed to hear and examine in the first instance all applications concerning streets and highways and report their opinion respecting them for the consideration and action of the common council.  All legislative bodies from the highest to the lowest have like committees for such purposes, and the common council of the city of Bridgeport was not an exception.

Clearly, therefore, there has been no lay-out of the proposed widening of the street in question by any committee in accordance with the charter of the city.

But, if this were not so, there has not been any lay-out by any committee that the charter recognizes.  The charter declares that the lay-out shall be made by a committee appointed for the purpose after the council shall have resolved to lay out the proposed street or alteration.  The case finds that no special committee was appointed in fact. But it is said that the reference of the petition to the general committee on streets and sidewalks in the first instance was a special appointment of that committee for all purposes connected with the proposed alteration, and therefore for the laying out of the alteration should it become necessary.

But, in the first place, the case finds no such fact.  The reference of the petition to the general standing committee on streets and sidewalks, was clearly, as we have seen, for them to consider and recommend what action the common council should take in the matter, and nothing more; and the committee, in fact, did nothing more.

In the second place, if what was done on the 3d day of October can be construed as a lay-out of the alteration of the street, the lay-out was made by the common council alone, contrary to the express provisions of the charter of the city. The committee simply recommended the alteration described to the council for their acceptance and approval. The council accepted and approved; and if by so doing the alteration was laid out, who did it? The committee, by their report and recommendation, do not pretend to have done it. They describe the alteration, it is true, but this was necessary to enable the council to know what alteration should be laid out. How does this case differ from what was done in such cases under the old charter of the city?

The old charter provided that the common council should make the lay-out, either by themselves directly, or by a committee appointed for the purpose. It is clear, if there was any lay-out here, that it was done by the common council, and not by a special committee, as the present charter requires.

But there was no lay-out of this improvement; and consequently no basis for the assessment of damages or benefits, and the assessment was therefore void.

We advise judgment for the plaintiff.

In this opinion the other judges concurred.