JACOB KEIFER *vs.* THE CITY OF BRIDGEPORT.

Third Judicial District, Bridgeport, October Term, 1896. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

In laying out a highway a city is bound to comply strictly with its charter requirements. If it fails to do this and the defect in the proceedings is jurisdictional, the city acquires no interest in the land, and the landowner is not obliged to appeal from the assessment of benefits and damages, but may maintain a suit in the nature of trespass against the city when it enters upon and attempts an actual appropriation of his land under its void proceedings.

The charter of the city of Bridgeport authorized the Common Council to lay out highways, and provided that if after a hearing of the parties interested the Common Council should resolve to lay out the street, they should appoint a committee whose duty it should be to make the layout. *Held* that a layout reported and recommended by the standing committee on streets and sidewalks, which was accepted and adopted by the Common Council, did not answer the requirements of the charter, and that this defect rendered the proceedings void.

The city claimed that the defect was a mere technical irregularity which the plaintiff had waived and was estopped from urging, and that the report of the assessment committee, which recited that the plaintiff, among others, "will receive an equal amount of damages and benefits in the premises," constituted a judgment which the plaintiff, by failing to appeal, had accepted. *Held* that the finding furnished no support for the defendant's claim of waiver and estoppel, and that the plaintiff ought not to be denied all remedy, upon the mere fiction that he had actually received and accepted a certain sum of money as damages and thereupon paid the same amount back to the city as benefits; especially as it did not appear that he ever participated in or had any actual knowledge of the proceedings.

[Argued October 29th—decided December 1st, 1896.]

ACTION in the nature of trespass for injury to and removal of a stone wall claimed to be an incumbrance in the highway, brought to the Court of Common Pleas in Fairfield County and tried to the court, *Curtis, J.* ; facts found and judgment rendered for the plaintiff, and appeal by the defendant for alleged errors in the rulings of the court. *No error.*

The case is sufficiently stated in the opinion.

VOL. LXVIII—26

*John J. Phelan*, for the appellant (defendant).

If the common council erred in adopting the layout of its standing committee on streets and sidewalks, instead of that of a special committee, the irregularity, at most, was only voidable by the plaintiff or others in interest, and could have been cured by waiver and acquiescence. *State* v. *Patterson*, 36 N. J. L. 159 ; 40 id. 246 ; *Payne* v. *Citizens Bank*, 29 Conn. 416 ; *Post* v. *Williams*, 33 id. 147 ; *New London* v. *Miller*, 60 id. 112. The proceedings of the city, if irregular in details, were still within the scope of its jurisdiction in the matter of layout of highways, and were cured by the plaintiff's failure to appeal. Cooley on Const. Lim., 431, 510, 511; 2 Dillon on Mun. Corp. (4th Ed.) § 929; Mills on Eminent Domain, § 323 ; Freeman on Judgments, § 487. Furthermore the plaintiff is estopped, because in law a judgment has been rendered by the assessors of benefits and damages, and been accepted by him. *Hildreth* v. *Lowell*, 11 Gray, 345 ; *Howland* v. *County Com'rs*, 49 Me. 143 ; *Monagle* v. *Bristol*, 8 Cush. 360; Mills on Eminent Domain, §§ 329, 330. The action of the plaintiff is a collateral proceeding, and he ought not to be permitted, in such a proceeding, to question or attack the validity of the layout, for the purpose of showing that the wall and pilasters were not nuisances and encroachments upon the highway, as claimed by the defendant. *Henline* v. *People*, 81 Ill. 269 ; *Secunbe* v. *Railroad Co.*, 90 U. S. 108 ; *Evans* v. *Hœffner*, 29 Mo. 149 ; 6 Amer. & Eng. Ency. of Law, 627 ; 1 Herman on Estoppel, 58, 317 ; *Butman* v. *Vermont Central R. R.*, 27 Vt. 498 ; *Galena R. R.* v. *Pound*, 22 Ill. 399 ; *Clark* v. *Drain Com.*, 50 Mich. 618.

*Stiles Judson, Jr.*, for the appellee (plaintiff).

The highway in question was never legally established. *Gregory* v. *Bridgeport*, 52 Conn. 40 ; *Hough* v. *Bridgeport*, 57 id. 292 ; *Farist Co.* v. *Bridgeport*, 60 id. 292. An appeal would only test the doings of the assessors, and not the validity of the layout. City Charter, § 42. Moreover, the plaintiff was in no sense aggrieved by any act of the assessors, whether authorized or not, by the charter. No sum whatever

was assessed against him as alleged benefits, nor were any damages awarded to him. The plaintiff's silence in no wise affected the city, and he cannot be estopped thereby. *Clinton* v. *Haddam*, 50 Conn. 87 ; *Viele* v. *Judson*, 82 N. Y. 33; *Ridgefield* v. *Reynolds*, 46 Conn. 379. The *acceptance*, by a person in whose favor an award is made, of the amount of the award, will act as an estoppel. *Hitchcock* v. *Ry. Co.*, 25 Conn. 518 ; *Hawley* v. *Harrall*, 19 id. 143 ; *Whittelsey* v. *Ry. Co.*, 23 id. 434. The plaintiff accepted nothing, nor does it appear that he ever had knowledge of the conclusions of the appraisers, nor was there ever any such award in form, as called for any action or protest from him. *Hartshorn* v. *Potroff*, 89 Ill. 511 ; Lewis on Em. Dom., § 606. 2 Dill. on Mun. Corp., § 593. The steps provided by charter must be strictly followed, and unless the precise steps pointed out are pursued, the action of the city is a nullity. Beach on Pub. Corp., §§ 557, 1177 ; Lewis on Eminent Domain, § 648. If a nullity, they cannot be resorted to as a shield, to protect the municipality from the consequences of any acts it may subsequently perform. The defect being *jurisdictional*, a failure to appeal would be no waiver of the right of the plaintiff to deny the validity of the proceedings. This question has been expressly decided by this court: *New Haven* v. *Ry. Co.*, 38 Conn. 423 ; *Meriden* v. *Camp*, 46 id. 290 ; *Miller* v. *Brown*, 56 N. Y. 384 ; *Mitchell* v. *Kirkland*, 7 Conn. 228 ; *Watrous* v. *Southworth*, 5 id. 309 ; *Beardsley* v. *French*, 7 id. 125 ; *Sears* v. *Terry*, 26 id. 285 ; *Avery* v. *Groton*, 36 id. 309 ; *Post* v. *Williams*, 33 id. 154. In the following cases it was expressly held that where the defects were jurisdictional, they could be shown collaterally. *McDonald* v. *Payne*, 114 Ind. 360; *Brimmer* v. *Boston*, 102 Mass. 19 ; *Thompson* v. *Ry. Co.*, 110 Mo. 163 ; *Barker* v. *Com'rs*, 45 Kan. 694; *Leavenworth* v. *Laing*, 6 id. 167.

FENN, J. The complaint in this action contained two counts. The court below held that the plaintiff could not recover on the first count. It is therefore unnecessary for us to give it any consideration now. The second count was for a trespass upon certain property owned by the plaintiff,

namely, a certain wall and pilasters attached thereto, lying along the southerly side of a highway known as Chapel Street, in the city of Bridgeport. On this count judgment was rendered for the plaintiff to recover $279 damages, and from such judgment the defendant has appealed.

The facts found material upon the present contention are these : In 1855, one Hamilton, then the owner of the premises now belonging to the plaintiff, erected a substantial brick wall on the northerly boundary of said premises, being the southerly boundary of what is now Chapel Street, and which was then a proposed highway. The outer face of said wall was 45 1/2 feet from the northerly line of said proposed highway, and was constructed with several large brick pilasters or buttresses of the same height as the wall, projecting from the face of said wall at its base, about 3 feet. Said wall was about 200 feet in length, 14 inches in thickness and 16 feet in height. The buttresses were built into the wall and were designed as supporters to the wall. The erection of said wall was the first act on Hamilton's part, in the actual dedication for highway purposes of any portion of land contiguous to the premises of said Hamilton along which said wall was built. All said strip outside of said wall and not occupied by said buttresses, was dedicated by said Hamilton to the public, and before 1884 that portion of said strip had been accepted by public user as a public highway. Said highway, which became known as Chapel Street, has no outlet on the west, and the use of the street has been almost entirely limited to persons who have come to reside upon it since said wall and buttresses were erected. A number of houses have been erected upon this street since its dedication to the public. In 1872, the plaintiff became the owner of the premises formerly owned by said Hamilton, and in 1884 he, with others owning property upon Chapel Street, addressed a petition to the Common Council of the city of Bridgeport, asking the city to accept Chapel Street, and to "work and grade it." Said street was not accepted by the city, no such official action being taken as is required by the charter of the city relative to the acceptance of streets. At

the time said petition was addressed to said Common Council, " Chapel Street " so-called, consisted of the strip of land that had been thrown open as a highway, which said strip did not include the land occupied by said buttresses. Subsequently in 1884, the city instituted certain proceedings for the layout of a street extending westerly from Main Street, of the uniform width of 45 feet, and substantially coincident with the lines of Chapel Street, except that the southerly line of said proposed layout intersected said buttresses of said wall, and extended westerly from Main Street, its proposed southerly line running parallel with and at a distance of about 3 inches from the face of said wall. The proceedings taken by the city in the attempted layout of said street were in all respects as required by the charter of the city, except that the Common Council did not appoint a committee to make the layout of the street in question. The proceedings in respect to said layout being that " the committee on streets and sidewalks reported and recommended that the following layout and description of grade of Chapel Street be adopted." Then followed a description and grade of the proposed layout of Chapel Street. On motion of a member of said council, " the report was accepted and the layout and grade adopted." No further proceedings were adopted to establish a layout of said street previous to the removal of said wall. No evidence, except such as may be legally inferred from the foregoing, was offered to show, and it did not appear, that the plaintiff attended the hearing before the Common Council relative to said proposed layout, or before the appraisers appointed to assess the benefits and damages from the layout of said street, or had any actual knowledge of such proceedings, or was ever heard in favor of or in opposition to said layout, or upon the subject of assessment of benefits and damages. The city was not prejudiced in any way by the silence or any apparent acquiescence of the plaintiff in said assessment, nor induced thereby to take any official action or change its attitude in any way in respect to said street; and the plaintiff, from that time until 1894, was left in the undisturbed possession of said

wall, buttresses, and the land upon which the same stood. In June 1894, the Common Council passed an order requiring plaintiff to remove so much of said pilasters or buttresses as extended over the southerly line of the layout as attempted to be made in 1884. The plaintiff refused to comply with the order, whereupon the city in July, 1894, caused said buttresses to be removed. In removing the buttresses said wall was much weakened, and a portion of the wall became so loosened by the removal of the pilasters, that it became necessary as a matter of safety to take down and remove a considerable portion of the wall, which the city caused to be done. In 1884, and ever since, the charter of the city has provided that "any person who shall feel aggrieved by any act of the assessors, in making any of the assessments of benefits or damages authorized in this Act, may make written application for relief to the Superior Court, or Court of Common Pleas, to be held in and for Fairfield County, at its regular terms next after the acceptance of the report of the assessors by the Common Council." No award of damages was made to, or assessment of benefits against, the plaintiff, of any specific sum upon said appraisal, but the assessors made report to the Common Council as follows: "And we did also estimate, ascertain and determine, that the following persons will receive an equal amount of damages and benefits in the premises." Then follows the name of the plaintiff and others. Said appraisers in said report awarded damages to, and assessed benefits against, sundry persons owning property upon said street. The plaintiff did not make any application to any court for relief from said finding or assessment of said appraisers. He endeavored by every reasonable means to prevent the city from removing said wall and buttresses.

On these facts the defendant claims that the judgment rendered was erroneous, and that the plaintiff should not have been permitted to recover, for three reasons: *First.* Because by his acquiescence in the result of the proceedings taken by the city in the establishment of Chapel Street in 1884, he waived all irregularities in such proceedings, and is estopped

from proving them in his action of trespass. *Second.* Because he failed to appeal from the doings of the assessors of benefits and damages on said street establishment, within the time limited by the charter of the city, and in law accepted the award of benefits and damages made by them and accepted by the Common Council. *Third.* Because in law he cannot be permitted to question the regularity of the proceedings in the establishment of said street, in a collateral proceeding.

We will examine each of these claims, and in the order stated. But, as preliminary, it will be noticed that the defendant does not contest the correctness of the ruling of the court below in holding that the recited action of the Common Council of Bridgeport did not constitute a legal layout of the street in question. Such contest would seem useless in view of the previous decisions of this court. *Gregory* v. *Bridgeport,* 52 Conn. 40; *Hough* v. *Bridgeport,* 57 id. 290; *Farist Steel Co.* v. *Bridgeport,* 60 id. 278. But the defendant in support of its first claim, as above stated, says that although the Common Council did not observe the required formality of appointing a committee specially deputed to make and report a layout of said Chapel Street, but accepted the layout recommended by the streets and sidewalks committee, it was only a technical error of the procedure of the Common Council itself, that in no manner affected the public rights of the plaintiff; that here was but an irregularity, at the most, making the proceeding voidable by the plaintiff or others, but which could have been cured by waiver and acquiescence. But in considering this claim of waiver, acquiescence and estoppel, the facts as the record discloses them must be kept in mind. Omitting the matter specially assigned —the failure of the plaintiff to appeal, to be hereafter considered—there is nothing which we can discover which will serve as a basis for the claim made. Prior to 1884, all of Chapel Street outside the wall and not occupied by the buttresses, had been dedicated to and accepted by the public, by user, as a highway. The request made to the Common Council in 1884, to accept said street, which did not include the buttresses, and " work and grade it," was not complied with.

The plaintiff, so far as appeared, did not attend any hearing before the Common Council or appraisers relative to the layout or assessment, did not have any actual knowledge of such proceedings, and was never heard in favor of or in opposition to any such action. Finally, " the city was not prejudiced in any way by the silence or any apparent acquiescence of the plaintiff in said assessment, nor induced thereby to take any official action or change its attitude in any way in respect to said street; and the plaintiff from that time until 1894, was left in the undisturbed possession of said wall, buttresses and the land upon which the same stood." It would seem that if, under this condition of things, either party was in a situation to invoke against the other the equitable doctrines arising from waiver, acquiescence and estoppel, it would be the plaintiff rather than the defendant.

But further, as we have seen, the defendant contends that the plaintiff is estopped, " because in law a judgment has been rendered him by the assessors of benefits and damages, and been accepted by him." It is said : " The assessment of benefits and damages to the plaintiff is a judgment holding him to have suffered damages by reason of said layout, the amount of which damages is held by them to be equal in amount to the benefits by him received therefrom. This judgment is, in effect, that the plaintiff has suffered and been paid an unnamed sum of money as damages, which sum has been by him paid back to the city for benefits received, for the purposes of distribution by the city to other persons damaged by the layout in question." The defendant cites, as being in support of this proposition, *Monagle* v. *County Com'rs of Bristol*, 8 Cush. 360; *Hildreth* v. *Lowell*, 11 Gray, 345; *Howland* v. *County Commissioners*, 49 Me. 43; Mills on Eminent Domain, §§ 329, 330. But none of these authorities bear upon the question further than in recognizing and applying two propositions: *First.* " After receiving damages, parties cannot be heard against the validity of proceedings, or appeal from the same, although they may be in fact erroneous." This is clearly recognized law in our own State; indeed Mills cites Connecticut cases to support the proposi-

tion. *Hawley* v. *Harrall*, 19 Conn. 142; *Hitchcock* v. *Danbury & Norwalk R. R.*, 25 id. 516. See also *Whittlesey* v. *H., P. & F. R. R. Co.*, 23 Conn. 421, 431. *Second.* Failure by a competent tribunal acting properly, to find damages, is in effect a judgment that no damage has been sustained, and suffices for an appeal by the objecting party. This also we may accept as correct. But neither of these propositions reach the vital point of the present claim. Here on the one hand was no estoppel by actual receipt of money, and on the other no action in the premises by competent authority to determine. How could there be competent authority to determine the benefits and damages sustained from a layout, if such a layout was itself illegal and void, and therefore none? Whether under these circumstances the plaintiff ought to have appealed, thus testing the validity of the layout itself, and whether his only remedy was to be found in that direction, we will consider presently as a separate question. Whether he was estopped from any remedy, by appeal or otherwise, by what took place, as he would have been by the actual receipt of money awarded, is the present subject of inquiry. It seems to us, very clearly, that he should not be so estopped. The very ground of the estoppel exists either in act or silence. He has done no act. Silence amounts to nothing, unless it is that of one upon whom rests a duty to speak. In what way was that duty imposed upon the plaintiff? He had requested the city to take action in reference to Chapel Street. But no such action as he desired was had. No action whatever, of which he is shown to have had any knowledge, was had. But assume such knowledge on his part, and then what? The assessors reported to the Common Council that the plaintiff " would receive an equal amount of damages and benefits in the premises." What premises? All that portion of the 45 foot layout, except about three feet lacking about three inches, to which the southerly line extended beyond and intersected the buttresses, already belonged to the public by dedication and acceptance by user; and this the defendant had furthermore been requested to officially accept, work and grade. For so much,

at least, there should have been no award either of benefits or damages, and the plaintiff could not complain that there was none. That damages and benefits were equal, is one way of saying that there were none ; that is, neither damages nor benefits that should be assessed. And it would, we think, have been natural and reasonable for the plaintiff to have understood the expression as meaning this, and to have further inferred that such conclusion was reached by the assessors because they regarded the previous action of the defendant city as an attempted layout of no more territory for a public highway than had already been dedicated to and accepted by the public for the purposes of such highway; as being, therefore, such action as no one could successfully question, and as in fact being what the plaintiff himself desired and in effect had requested. It was, we think, more natural for the plaintiff to understand the language used in this way, than to have regarded it as intending to assess both damages and benefits ; to award a substantial sum for a material injury, and then to offset it by an equal amount for benefits, though the amount of neither damages nor benefits was worth the trouble of ascertaining, or if ascertained, of stating. Whatever may be regarded as the proper function of fictions in the law at the present time, we cannot agree to the proposition that the plaintiff should be held to have received what he had not received, accepted a sum which never existed, paid it back when he never had it, and thereby acknowledged both damage and benefit resulting to him from an act to which he never assented, and of which it cannot be conclusively presumed he ever knew—all this for the purpose of invoking against him that which, at least sometimes, has been appropriately called " the equitable doctrine of estoppel."

But that which is perhaps the most material question remains, in the final contention of the defendant that the plaintiff cannot be permitted to question the regularity of the proceedings in the establishment of said street, in a collateral proceeding, as the defendant claims this to be. That the plaintiff might have appealed from the action taken,

should be conceded; for it appears that in the case of *Gregory* v. *Bridgeport, supra,* this was the course taken, and apparently it was approved by this court. So also in the case of *Hough* v. *Bridgeport, supra.* But was the plaintiff limited to this course? That would seem to depend upon whether the error in the procedure constituted what has been denominated and regarded as a jurisdictional defect. Concerning such defects the law is well settled, as stated in *New Haven* v. *Fair Haven & Westville R. R. Co.,* 38 Conn. 422, 430, where this court said: "If it (the city) acted within its jurisdiction, the assessment is valid and binding unless appealed from. If it acted outside of its jurisdiction, the act is unauthorized and void, and confers no rights upon the city, and imposes no obligation upon the party assessed." The court added in reference to that case: "It being a jurisdictional question, and relating to the proceedings of a tribunal with special and limited powers, we are clearly of the opinion that it is an open question in this action." Authorities to the same effect are almost numberless, but citation is unnecessary, for the proposition is not disputed, and is beyond controversy. The contention narrows itself to the claim on the one part that the defect in the proceedings was jurisdictional, and on the other that it was not. Perhaps the view of this court bearing upon the matter and concerning such a defect is indicated by what was further said in *Gregory* v. *Bridgeport, supra,* p. 44: "There was no layout of this improvement; and consequently no basis for the assessment of damages or benefits, and the assessment was therefore void." Concerning what this court regards as jurisdictional defects, may also appear by what has been said and held in other cases. Thus in the very recent case of *Dorrance* v. *Raynsford et ux.,* 67 Conn. 1, 7, an action to recover possession of real estate, the plaintiff, to make out his title, relied upon a deed purporting to be made by virtue of an order of a Court of Probate. This order the defendant claimed to be invalid. The plaintiff insisted that while such order might have been attacked directly by appeal, it could not be in a collateral proceeding, except for fraud. This court, as a

sufficient answer to such claim, said : " A Court of Probate, when ordering a sale of any of the real estate of a deceased person, is exercising a special statutory power. . . . In all such cases the rule is that the authority must be strictly followed, otherwise the order will be void ; " and the cases of *Wattles* v. *Hyde*, 9 Conn. 10 ; *Watson* v. *Watson*, 10 id. 77 ; *Howard* v. *Lee*, 25 id. 1 ; *Atwater* v. *Barnes*, 21 id. 237 ; *Parsons* v. *Lyman*, 32 id. 566, 571 ; *Potwine's Appeal*, 31 id, 383, all to the same effect, are cited in support of the statement. See also the still more recent case of *Terry's Appeal from Probate*, 67 Conn. 181, where the distinction between want of jurisdiction and an erroneous exercise of an admitted jurisdiction is considered and explained. These decisions are clearly in point. There are no inherent powers in municipalities relating to highways. The express provisions of their charters and the modes therein provided, are the only authority under which they can act in exercising the right of eminent domain and taking private property for public use, as highways. They exercise " a special statutory power, which must be strictly followed, otherwise the proceedings will be void." Indeed, such is the rule in all cases where property is taken *in invitum* for public use. *Williams* v. *H. & N. H. R. R. Co.*, 13 Conn. 397–408 ; *Nichols* v. *Bridgeport*, 23 id. 189–208 ; *Foot* v. *N. H. & N. Co.*, 23 id. 214–229.

For the reasons, then, which we have stated in part, and which more fully appear in the cases to which we have referred, we are of the opinion that the defect existing in the proceedings in question is of such a character as to prevent the defendant from invoking its said action in justification and defense of what would otherwise be a trespass upon the plaintiff's property, and give him the right to recover damages. Perhaps, indeed, the fact should not be lost sight of, that in this case the plaintiff did not, in the first instance, have occasion to attack, collaterally or otherwise, the validity of the layout. He assumed no burden of showing its invalidity. The defendant relied upon such action, and upon it therefore devolved the duty of its vindication. It stood in the same relation to the proceedings had in this case, as the plaintiff

did in *Dorrance* v. *Raynsford et ux., supra,* to those of the
Court of Probate. Like an attaching officer in an action of
trespass for taking property, it must justify under a valid
process.

There is no error.

In this opinion the others judges concurred.