CAROLE S. MOSCOWITZ *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF SHERMAN
(6043)

BORDEN, SPALLONE and FOTI, Js.

Argued April 7—decision released September 20, 1988

*Jack Stock,* with whom was *Peter V. Gelderman,* for the appellant (defendant).

*Francis G. Pennarola,* for the appellee (plaintiff).

SPALLONE, J. The defendant appeals from the judgment rendered by the trial court sustaining the plaintiff's administrative appeal, claiming the trial court erred (1) by failing to find that a notation on a subdivision map restricting further subdivisions was valid, (2) by failing to find that the notation was valid where no appeal had been taken from the imposition of the notation, and (3) by failing to find that the plaintiff was estopped from challenging the notation, having taken title to the subject property with full knowledge of the restriction. We find no error.

The following facts are pertinent to this appeal. In 1977, the defendant planning and zoning commission approved an application for subdivision submitted by Marianne E. Ward, the owner of the property at that time. The approval resulted in the subdivision of a 94 acre parcel of land into three parcels: parcel A was set out as 46.4 acres; parcel B was 36.2 acres; and parcel C was 2 acres.[1] At this time, Ward included a notation on the subdivision map that "parcel B shall not be resubdivided into more than 2 parcels."

In 1979, Ward applied to the defendant for a resubdivision of parcel B into three lots: two lots of 14 acres

---

[1] The remaining 9.4 acres were designated as open space.

each and an additional lot of 8.2 acres which was to be added to the previously created parcel A. When the defendant approved this application, it required that the subdivision map bear a notation that "Lots 1 and 2 shall not be resubdivided at any future time."

Ward subsequently conveyed the two 14 acre lots to the plaintiff. In March, 1985, the plaintiff applied to the defendant to resubdivide the 28 acres into six residential building lots.[2] After a public hearing was held, the defendant denied the application. The defendant's stated reasons for its denial of the plaintiff's application was the existence of the restrictive notation on the 1979 subdivision map, and its determination that there had not been a "sufficient change in circumstances" to warrant removal of the restriction.

The plaintiff appealed to the Superior Court, contending that the map restriction was unenforceable and that the defendant had acted illegally, arbitrarily and in abuse of its discretion. The defendant countered with the argument that the imposition of the restrictive notation was no more than a "conditional approval" of the 1979 resubdivision application, that such conditional approvals have been found to be permissible under recent state case law, and that any challenge to the validity of the imposition of the condition should have been made in 1979. The trial court sustained the plaintiff's appeal, finding that the defendant's actions were beyond the power granted to it by General Statutes §§ 8-25 and 8-26,[3] and ordered that the case be

[2] The parcel is located in a "Zone A" district which allows single family residences occupying lots of 80,000 square feet or approximately 2 acres.

[3] "[General Statutes] Sec. 8-25. SUBDIVISION OF LAND. (a) No subdivision of land shall be made until a plan for such subdivision has been approved by the commission. . . . Before exercising the powers granted in this section, the commission shall adopt regulations covering the subdivision of land. . . . Such regulations shall provide that the land to be subdivided shall be of such character that it can be used for building purposes without

remanded to the defendant for approval of the application if the plaintiff has met all of the relevant zoning and subdivision regulations. From this judgment, the defendant appeals.

danger to health or the public safety, that proper provision shall be made for water, drainage and sewerage and, in areas contiguous to brooks, rivers or other bodies of water subject to flooding, including tidal flooding, that proper provision shall be made for protective flood control measures and that the proposed streets are in harmony with existing or proposed principal thoroughfares shown in the plan of development as described in section 8-23, especially in regard to safe intersections with such thoroughfares, and so arranged and of such width, as to provide an adequate and convenient system for present and prospective traffic needs. Such regulations shall also provide that the commission may require the provision of open spaces, parks and playgrounds when, and in places, deemed proper by the planning commission, which open spaces, parks and playgrounds shall be shown on the subdivision plan. Such regulations, on and after July 1, 1985, shall provide that proper provision be made for soil erosion and sediment control pursuant to section 22a-329. The commission may also prescribe the extent to which and the manner in which streets shall be graded and improved and public utilities and services provided and, in lieu of the completion of such work and installations previous to the final approval of a plan, the commission may accept a bond in any amount and with surety and conditions satisfactory to it securing to the municipality the actual construction, maintenance and installation of such improvements and utilities within a period specified in the bond. Such regulations may provide, in lieu of the completion of the work and installations above referred to, previous to the final approval of a plan, for an assessment or other method whereby the municipality is put in an assured position to do such work and make such installations at the expense of the owners of the property within the subdivision. Such regulations may provide that in lieu of either the completion of the work or the furnishing of a bond as provided in this section, the commission may authorize the filing of a plan with a conditional approval endorsed thereon. Such approval shall be conditioned on (1) the actual construction, maintenance and installation of any improvements or utilities prescribed by the commission or (2) the provision of a bond as provided in this section. Upon the occurrence of either of such events, the commission shall cause a final approval to be endorsed thereon in the manner provided by this section. Any such conditional approval shall lapse five years from the date it is granted, provided the applicant may apply for and the commission may, in its discretion, grant a renewal of such conditional approval for an additional period of five years at the end of any five-year period, except that the commission may, by regulation, provide for a shorter period of conditional approval or renewal of such approval. Any person, firm or corporation who, prior to such final approval, sells or offers for

## I

We agree with the trial court's conclusion that the defendant did not have the authority in 1979 to impose a condition restricting future subdivisions and, there-

sale any lot subdivided pursuant to a conditional approval shall be fined not more than five hundred dollars for each lot sold or offered for sale.

"(b) The regulations adopted under subsection (a) of this section may also encourage energy-efficient patterns of development and land use, the use of solar and other renewable forms of energy, and energy conservation. . . . "

"[General Statutes] Sec. 8-26. APPROVAL OF SUBDIVISION AND RESUBDIVISION PLANS. WAIVER OF CERTAIN REGULATION REQUIREMENTS. APPLICATIONS INVOLVING INLAND WETLANDS AND WATERCOURSES. All plans for subdivisions and resubdivisions, including subdivisions and resubdivisions in existence but which were not submitted to the commission for required approval, whether or not shown on an existing map or plan or whether or not conveyances have been made of any of the property included in such subdivisions or resubdivisions, shall be submitted to the commission with an application in the form to be prescribed by it. The commission shall have the authority to determine whether the existing division of any land constitutes a subdivision or resubdivision under the provisions of this chapter, provided nothing in this section shall be deemed to authorize the commission to approve any such subdivision or resubdivision which conflicts with applicable zoning regulations. . . . The commission may hold a public hearing regarding any subdivision proposal if, in its judgment, the specific circumstances require such action. No plan of resubdivision shall be acted upon by the commission without a public hearing. . . . *The commission shall approve, modify and approve, or disapprove any subdivision or resubdivision application or maps and plans submitted therewith,* including existing subdivisions or resubdivisions made in violation of this section, within the period of time permitted under section 8-26d. Notice of the decision of the commission shall be published in a newspaper having a substantial circulation in the municipality and addressed by certified mail to any person applying to the commission under this section, by its secretary or clerk, under his signature in any written, printed, typewritten or stamped form, within fifteen days after such decision has been rendered. Such notice shall be a simple statement that such application was approved, modified and approved or disapproved, together with the date of such action. The failure of the commission to act thereon shall be considered as an approval, and a certificate to that effect shall be issued by the commission on demand. The grounds for its action shall be stated in the records of the commission. . . . The provisions of this section shall apply to any municipality which exercises planning power pursuant to any special act." (Emphasis added.)

fore, that condition was void ab initio and could not provide sufficient grounds for the denial of the plaintiff's application.

It is axiomatic that " ' "[a]s a creature of the state, the . . . [town . . . whether acting itself or through its planning commission,] can exercise only such powers as are expressly granted to it, or such powers as are necessary to enable it to discharge the duties and carry into effect the objects and purposes of its creation." *Baker* v. *Norwalk*, 152 Conn. 312, 314, 206 A.2d 428 [1965], and cases cited therein; *Bredice* v. *Norwalk*, 152 Conn. 287, 292, 206 A.2d 433 [1964]; *State ex rel. Sloane* v. *Reidy*, 152 Conn. 419, 423, 209 A.2d 674 [1965]. In other words, in order to determine whether the [condition] in question was within the authority of the commission to [impose], we do not search for a statutory prohibition against such an [action]; rather, we must search for statutory authority for the [action].' *Avonside, Inc.* v. *Zoning & Planning Commission*, 153 Conn. 232, 236, 215 A.2d 409 (1965); *Blue Sky Bar, Inc.* v. *Stratford*, 203 Conn. 14, 19, 523 A.2d 467 (1987)." *Builders Service Corporation* v. *Planning & Zoning Commission*, 208 Conn. 267, 274–75, 545 A.2d 530 (1988).

We begin our analysis with General Statutes § 8-26 which, inter alia, authorizes a municipal planning commission to consider and act upon proposed subdivision applications. Simply stated, "[n]othing in the subdivision approval statute, § 8-26, allows for the imposition of conditions upon the planning and zoning commission's approval of a subdivision plan; the statute merely provides for the commission to 'approve, modify and approve, or disapprove' a subdivision application." *Carpenter* v. *Planning & Zoning Commission*, 176 Conn. 581, 592, 409 A.2d 1029 (1979).[4] A planning commis-

[4] The court in *Carpenter* v. *Planning & Zoning Commission*, 176 Conn. 581, 591, 409 A.2d 1029 (1979), held that a subdivision approval conditioned

sion, therefore, is only authorized to take one of three courses of action when considering a subdivision application: it can approve the application exactly as it was submitted; it can make changes to the application to ensure compliance with the subdivision regulations and compatibility with the municipality's comprehensive plan, and then approve the application as so modified; or it can disapprove the application outright. Any other action taken by a planning commission necessarily falls outside the statutory delegation of powers contained in the enabling act and cannot stand. *Carpenter* v. *Planning & Zoning Commission,* supra, 596, citing *Wine* v. *Council of City of Los Angeles,* 177 Cal. App. 2d 157, 2 Cal. Rptr. 94 (1960); *State ex rel. Strother* v. *Chase,* 42 Mo. App. 343 (1890); *Midtown Properties, Inc.* v. *Township of Madison,* 68 N.J. Super. 197, 172 A.2d 40 (1961); see also 4 R. Anderson, American Law of Zoning (3d Ed.) § 25.18, pp. 319, 323; 3 A. & D. Rathkopf, Law of Zoning and Planning § 42.07 [4] [b] n.65; 7 P. Rohan, Zoning and Land Use Controls § 45.01 [5]; T. Tondro, Connecticut Land Use Regulation § IV-B-3, p. 110; 2 E. Yokley, Zoning Law and Practice (3d Ed.) § 12.7, p. 48.

The defendant attempts to justify its actions by referring us to cases where "conditional approvals"[5] have been imposed by planning commissions and upheld by the courts. See, e.g., *Whittaker* v. *Zoning Board of Appeals,* 179 Conn. 650, 427 A.2d 1346 (1980); *Carpenter* v. *Planning & Zoning Commission,* supra;

on the acquisition of approval from the highway superintendent was a "failure to act" by the subdivision commission within the meaning of General Statutes § 8-26. The court also noted in passing that this type of "conditional approval" was *not* a modification within the meaning of § 8-26. Id., 593 n.7.

[5] Although § 8-25 permits preliminary approvals conditioned on the completion of work ordered by a commission or the issuance of a bond securing the completion of such work; see footnote 3, supra; there is no claim that this type of "conditional approval" is at issue here.

*Nicoli* v. *Planning & Zoning Commission,* 171 Conn. 89, 368 A.2d 24 (1976); *Crescent Development Corporation* v. *Planning Commission,* 148 Conn. 145, 168 A.2d 547 (1961); *Langbein* v. *Planning Board,* 145 Conn. 674, 146 A.2d 412 (1958).

Of the cases relied on by the defendant, however, only two concern the review of subdivision plans; *Nicoli* and *Crescent Development;* both of which are clearly distinguishable from the case now before us. First, the defendant is incorrect in its statement that these cases upheld the imposition of conditional subdivision approvals. In *Crescent Development Corporation* v. *Planning Commission,* supra, where a planning board had approved a subdivision application "subject to" changes in the proposed roads and accessways, our Supreme Court noted that "the practical effect of the defendant's action was to approve the plan after modifying it." Id., 148. The court noted that the power to modify was given by statute; General Statutes § 8-26; and concluded that both the New Canaan subdivision regulations and General Statutes § 8-25 supported the commission's actions. Id., 149, 152–53. In *Nicoli* v. *Planning & Zoning Commission,* supra, our Supreme Court was presented with a factual scenario almost identical to that in *Crescent Development.* Again, relying on the provisions regarding traffic safety and adequate thoroughfares contained in both § 8-25 and the municipality's subdivision regulations, the court found sufficient authority for the modifications ordered by the planning commission.[6]

---

[6] Although *Nicoli* v. *Planning & Zoning Commission,* 171 Conn. 89, 368 A.2d 24 (1976), does not contain a clear expression of its interpretation of the commission's actions in light of the three avenues of action available, the factual similarity of the changes ordered by the commissions in *Nicoli* and *Crescent Development Corporation* v. *Planning Commission,* 148 Conn. 145, 168 A.2d 547 (1961), as well as the favorable citation in *Nicoli* to the decision in *Crescent Development,* lead us to conclude that the *Nicoli* court also treated the commission's orders as a modification and approval pursuant to § 8-26.

Lest we be accused of being more concerned with semantics than substance, we must note that it is the *nature* of the underlying action taken by the planning commission that will determine its legality, not whether it is phrased in terms of a "modification" or "conditional approval." The commissions in *Crescent Development* and *Nicoli* were found to possess the authority to require alterations in the planned road layouts submitted to them on the basis of their legitimate concerns with traffic flow. In contrast, the imposition of the restrictive notation by the defendant in this case is neither a "modification," within the generally understood meaning of that term, nor does it bear a rational relationship to the enumerated health, safety and public welfare considerations set forth in General Statutes § 8-25.[7]

We conclude that a blanket prohibition on future subdivisions, without reference to a relevant provision in either the local subdivision regulations or the enabling statutes, is an impermissible expansion of the powers wielded by a planning commission.[8] As an administra-

---

[7] For example, § 8-25 mandates that subdivision regulations provide for water, drainage and sewerage; flood controls; harmonious street plans; safe intersections; and soil erosion and sediment control. In its discretion, the commission may provide for such things as the dedication of land for parks and playgrounds; the grading of streets; the installation of public utilities and services; and the encouragement of energy efficient patterns of development. See footnote 3, supra.

[8] We find the fact that Ward, the applicant in 1977, first suggested the imposition of the notation is of no significant consequence. If Ward had desired a perpetual restriction on this piece of land, she easily could have included a restrictive covenant in the deed that she conveyed to the plaintiff. Her power to limit the future use of those parcels was not a power she could transfer to the planning commission. Nor is it a power that the planning commission has authority to possess. In fact, it has been said that a planning commission cannot base its denial of subdivision approval on the existence of a deed restriction if the application otherwise meets the regulations. *Anderson* v. *Board of Supervisors*, 63 Pa. Cmwlth. 335, 437 A.2d 1308 (1981); see also *Board of Commissioners* v. *Haslett*, 69 Pa. Cmwlth. 1, 450 A.2d 298 (1982); 4 R. Anderson, American Law of Zoning

tive body, a municipal planning commission performs ministerial functions. T. Tondro, supra, IV-B-3, p. 113. "If the plan submitted conforms to [the] regulations, the council has no discretion or choice but to approve it." (Citations omitted.) *RK Development Corporation v. Norwalk*, 156 Conn. 369, 375–76, 242 A.2d 781 (1968). By placing the restrictive notation on the 1979 map, the commission empowered itself to deny any future applications even if the future applications fully complied with the regulations. This it cannot do.[9]

## II

The defendant next claims that because there was no appeal taken from the original imposition of the

(3d Ed.) § 25.18, p. 323. The responsibility of enforcing restrictive covenants in deeds is allocated to neighboring landowners, not to a municipal commission.

[9] We are also mindful of the defendant's interpretation of the nature of the restrictive covenant. When the defendant denied the plaintiff's subdivision application, it stated that no "significant change of circumstances" had yet occurred to warrant removal of the notation. This statement clearly indicates that the defendant is of the belief that, having imposed the restriction unilaterally, it can also lift the restriction whenever it chooses; in fact, the defendant states as much in its brief. The difficulty raised is that the defendant's eventual decision to remove the notation would, of necessity, be arbitrary and subject to challenge by neighboring landowners on that ground. Without the existence of provisions in the subdivision regulations to guide the commission to the ultimate decision to lift the restriction because of a "change in circumstances," the commission's determination would be bereft of the support necessary for the decision to be upheld by the courts. Furthermore, the plaintiff, or her successors in title, would have no way of knowing *when* a sufficient change in circumstances had occurred which would result in a successful subdivision application.

On the basis of these considerations, we believe that if the restriction were to be upheld by this court, the prohibition against future subdivisions must exist in perpetuity. Not only would this allow the defendant to exercise powers over the future use of specific lots of land usually invested in the owners of the parcels; see footnote 9, supra; but it would also create a curious dichotomy in the authority possessed by a planning commission as opposed to other municipal decision making boards, which ordinarily do not make permanent, irreversible decisions.

notation in 1979, the trial court erred in allowing the plaintiff to challenge the restriction on its merits. We disagree.

"We have frequently stated that when a party has a statutory right of appeal from the decision of an administrative agency, he may not, instead of appealing, bring an independent action to test the very issue which the appeal was designed to test. The only relevant exception to this rule is where the administrative action is void." (Citations omitted.) *Carpenter* v. *Planning & Zoning Commission,* supra, 598. The case now before us falls within that exception. We have already concluded that the imposition of the restrictive notation by the commission in 1979 was an impermissible expansion of the powers delegated to it by our statutes. As such, the act of the commission was without statutory authorization and, therefore, the planning commission was without jurisdiction to impose that condition. Where the challenge raised is to the power of the agency to act, the failure to appeal immediately does not deprive the challenger of his right to bring the claim at a later date. See, e.g., *DiCamillo* v. *Clomiro,* 174 Conn. 351, 387 A.2d 560 (1978) (jurisdictional claim entertained one year after grant of variance); *Smith* v. *F. W. Woolworth Co.,* 142 Conn. 88, 111 A.2d 552 (1955) (jurisdictional claim filed one month after grant of variance); *Hutchison* v. *Board of Zoning Appeals,* 138 Conn. 247, 83 A.2d 201 (1951) (jurisdictional claim brought three years after change in zone boundaries); *National Transportation Co.* v. *Toquet,* 123 Conn. 468, 196 A. 344 (1937) (jurisdictional claim entertained two years after change in zone); *Ribeiro* v. *Andover,* 19 Conn. Sup. 438, 116 A.2d 769 (1955) (jurisdictional claim raised three years after amendment to zoning regulations).

Just as the planning and zoning commissions in these cases were acting without jurisdiction due to their fail-

ure to comply with statutory prerequisites, the defendant herein acted without jurisdiction when it overstepped the bounds of its statutory authority. A cause of action will be allowed when "[t]he allegations of the complaint clearly show that [the] purpose in bringing suit [is] not to seek a review of what the board did or of the reasons on which it relied [when taking action], but rather to ascertain whether, in doing what it did do, the board had jurisdiction to act at all." *Smith* v. *F. W. Woolworth Co.*, supra, 93.

The defendant's reliance on our recent decision in *Spectrum of Connecticut, Inc.* v. *Planning & Zoning Commission*, 13 Conn. App. 159, 535 A.2d 382 (1988), is misplaced. In that case, a condition was imposed on the granting of a special permit to run a video arcade that required the plaintiff to control loitering and nuisances in the vicinity of the arcade. When the plaintiff sought a renewal of the special permit, its application was denied on the ground that the condition had not been fulfilled. The plaintiff appealed to the Superior Court claiming, inter alia, that the condition imposed was an "unauthorized semi-policing obligation." The court sustained the appeal finding that the commission could not impose this type of condition on a special permit applicant. On appeal to this court, we determined that the trial court erred in permitting the plaintiff to attack the validity of the condition and directed judgment to be rendered in favor of the defendant commission.

Rather than furthering the defendant's claim, *Spectrum* exemplifies the traditional rule favoring immediate appeals set out in *Carpenter*, supra. The plaintiff in *Spectrum* was not challenging the power of the planning and zoning board to impose conditions on a special permit; that authority is specifically granted to the

board in its enabling statute, General Statutes § 8-2.[10] Instead, the plaintiff in *Spectrum* sought a determination of whether the particular condition imposed was the *type* of condition envisioned by the statute and the applicable zoning regulations. The difference between a challenge to an agency's jurisdiction and a challenge to the agency's proper exercise of its jurisdiction is significant. A successful suit on the former renders the action void and, therefore, may be brought at any time. A successful suit on the latter renders the action merely voidable and, therefore, must be instituted within the statutory period. See *Cavallaro* v. *Durham,* 190 Conn. 746, 748, 462 A.2d 1042 (1983); *Misinonile* v. *Misinonile,* 190 Conn. 132, 136, 459 A.2d 518 (1983); *Carpenter* v. *Planning & Zoning Commission,* supra, 598–99.

We conclude, therefore, that the failure to appeal immediately from the commission's action in 1979 does

---

[10] General Statutes § 8-2 provides in pertinent part: "REGULATIONS. The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open spaces; the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes, and the height, size and location of advertising signs and billboards. Such zoning commission may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts, it may regulate the erection, construction, reconstruction, alteration or use of buildings or structures and the use of land. All such regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district, but the regulations in one district may differ from those in another district, *and may provide that certain classes or kinds of buildings, structures or uses of land are permitted only after obtaining a special permit or special exception* from a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, whichever commission or board the regulations may, notwithstanding any special act to the contrary, designate, *subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values."* (Emphasis added.)

not bar the plaintiff from challenging that restriction now. Indeed, "[her] rights were unaffected by that action, wherein the planning board had no jurisdiction. *Keifer* v. *Bridgeport,* [68 Conn. 401, 36 A. 801 (1896)]. [Her] appeal in the present proceeding from the action taken by the planning board in [1979] involves no collateral attack upon its earlier action but a direct attack upon its later action, which was clearly void and contrary to law. The appeal in no way challenges the validity of the [subdivision] regulations but brings in question, incidentally, only the validity of the action attempted by the planning board thereunder." *Hutchison* v. *Board of Zoning Appeals,* supra, 252; see also *Smith* v. *F. W. Woolworth Co.,* supra; *Miller* v. *McNamara,* 135 Conn. 489, 495, 66 A.2d 359 (1949).

### III

In light of our foregoing conclusions, the defendant's final claim merits little discussion. In essence, the defendant contends that the plaintiff should be estopped from now challenging the restrictive notation because she accepted title to the parcel with full knowledge of the existence of this restriction. This argument is a non sequitur. A party cannot be prevented from contesting the validity of any action taken by a zoning or planning board simply because it occurred prior to her taking of title to property affected by that act. Whether the challenge proves ultimately successful is another matter entirely. Moreover, as we concluded, supra, an attack focused on the power of the municipal commission to act may be brought at any time. As the cases cited in part II indicate, a landowner is not estopped from pursuing a legal remedy solely because he had prior knowledge of the commission's actions. See, e.g., *Hutchison* v. *Board of Zoning Appeals,* supra ("The fact, as found by the court, that the plaintiff had knowledge for more than three years prior to [the initiation of his suit], that the purported change of zone had

been made did not affect his rights."). The defendant does not refer us to any case law that holds differently.

Indeed, the defendant's briefing of this claim contains no citation to case law whatsoever; rather, it relies solely on public policy considerations. A recurring theme in this portion of the defendant's argument is the possible reliance of developers and neighboring landowners on the subdivision restriction placed on the plaintiff's property. Although we acknowledge that this is an important consideration; see *Coombs* v. *Larson,* 112 Conn. 236, 152 A. 297 (1931); due to the defendant's failure to pursue this aspect in the trial court by introducing evidence regarding the existence and extent of prejudice to the property rights of others in the community, we are powerless to grant the defendant the relief it now seeks.

"The broad language of [*Coombs* v. *Larson,* supra,] must be read in the light of the situation which the court had just outlined. Estoppel is necessarily based upon prejudice and in the absence of prejudice does not exist. *Tradesmens National Bank of New Haven* v. *Minor,* 122 Conn. 419, 424, 190 Atl. 270 [1937]; *Faulkner* v. *Keene,* 85 N.H. 147, 157, 155 Atl. 195 [1931]. . . . In the absence of anything in the record upon which we could hold that the rights of anyone had been prejudiced by the conduct of the plaintiff subsequent to the [action taken], there is no basis for a finding of such prejudice as would create an estoppel." *National Transportation Co.* v. *Toquet,* supra, 477–78; see also *State ex rel. DeGregorio* v. *Woodruff,* 135 Conn. 31, 35–36, 60 A.2d 653 (1948).

There is no error.

In this opinion the other judges concurred.