[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an administrative appeal from the failure of a planning commission to make changes in an approved but unrecorded subdivision map and to reduce the bond for improvements. The appeal raises the question as to the extent of jurisdiction of a planning commission over a subdivision application after its approval and the expiration of the appeal period. The plaintiff claims that he received an inferred approval of his request when the commission failed to act on the changes, while the defendants claim they were not required to act on the request and that there is no subject matter jurisdiction over this appeal.
The subject property consists of about eight and one-half acres of land on Hogsback Road in Oxford, which is a public highway. The plaintiff filed a four lot subdivision application in late July 1989 which the Oxford Planning and Zoning Commission (hereafter called the Commission) received at a meeting held August 10, 1989. Two of the four lots were interior lots or flag lots. Note 3 on the proposed subdivision map stated: "All driveways to rear lots to be cleared 25' and graveled 8" deep and 20' wide by developer."
The Commission decided not to hold a public hearing on the application, and after a brief discussion approved it at its meeting of October 5, 1989, subject to five conditions. (Exhibit L). Four of these conditions are minor and are not questioned by the plaintiff. Condition five reads as follows: "Security to include all improvements as shown on plan of improvements shall be posted in an amount determined by the Town Engineer in a form satisfactory to Town Counsel." The notice of approval to the applicant stated that the deadline date of the approval was January 16, 1990, and if the conditions of the approval were not met by that date an extension of time could be requested. A legal notice indicating approval of the subdivision with conditions was published on October 18, 1989. No appeal was taken to the Superior Court within 15 days of publication of the notice of the decision by the plaintiff or anyone else.
On January 4, 1990 the Commission was notified by letter from the plaintiff's representative that the amount of the security had not been determined by the Town Engineer, and a request was made for an extension of time from January 16, 1990 to February 16, 1990 for filing of the bond. On January 8, 1990 the Commission granted the extension request to February 16, 1990, and on January 11, 1990 it notified the plaintiff's representative by letter that the amount of the security had been set by the Town Engineer at $25,300, with CT Page 4459 the security to be posted in a form satisfactory to Town Counsel. (Exhibit O). The form of security requested was a surety bond. The bond covered the cost of construction of the driveways to the two interior lots, monuments and pins to mark the lot boundaries, and the cost of erosion and sedimentation controls. The amount of the security was then questioned by Brenton, who requested another extension. The Commission voted to grant a 60 day extension from February 16, 1990 to April 17, 1990. A representative of the plaintiff then wrote to the Commission on March 20, 1990 asking to be placed on the Commission's agenda for its April 5, 1990 meeting "to ask for a change to Note #3" on the approved subdivision map. The letter did not request a subdivision or resubdivision of the property, no revised maps or documents were enclosed, and it did not request a reduction in the amount of the required security.
At the meeting on April 5, 1990 the plaintiff's attorney questioned whether the driveway improvements could be bonded and claimed that note 3 on the map was not based upon the subdivision regulations. The approved subdivision map with note 3 deleted was presented. At that point the approval of the subdivision had not expired even though the map had not been recorded. The Commission tabled the matter to refer it to Town Counsel. On April 12, 1990 the plaintiff's attorney wrote to the Commission requesting an additional extension of time to comply with the conditions established by the Commission. The next Commission meeting on May 3, 1990 was after the April 17, 1990 extension had expired, but the Commission voted to extend the deadline again until July 12, 1990.
This appeal was commenced on May 9, 1990 when it was served, Valley Cable Vision Inc. v. Public Utilities Commission, 175 Conn. 30, 33. The proper persons were served as required by section 8-8(e) of the General Statutes. The appeal alleges that on April 5, 1990 the plaintiff applied to the Commission for an alteration in the amount of the subdivision bond, requested a modification of note 3 on the subdivision map, and an extension of the time for the posting of the bond. The Commission questions whether the plaintiff ever requested a modification of the subdivision plan, and denies that a new subdivision or resubdivision plan was ever filed.
At the trial the Commission filed a motion to dismiss this appeal. To determine if there is subject matter jurisdiction over the appeal, the legality and effect of the original approval, and the status of the subdivision must be determined first. CT Page 4460
As the owner of the property involved in the subdivision and the person required to post the subdivision bond requested by the Commission, the plaintiff would be aggrieved by the Commission's failure to change the amount of the bond or delete Note 3 from the approved subdivision map, Bossert Corporation v. Norwalk, 157 Conn. 279, 285, provided those actions are appealable under the facts of this case.
The bond reduction requested is based upon a claim that the Commission did not have the authority to condition its approval of the subdivision on the immediate building and bonding of subdivision driveways, since the authority for such condition is not granted by either the Oxford Subdivision Regulations or the Oxford Driveway Ordinance. Section 9.21 of the Subdivision Regulations provides that "driveways shall be constructed in accordance with the Oxford Driveway Ordinance."[1]
There is no provision in either the regulations or the ordinance requiring the construction of driveways on subdivision lots at the time of subdivision approval, or allowing the bond or other security for subdivision improvements to cover the cost of driveways on subdivision lots. When passing upon a subdivision application, a planning commission is controlled by the regulations which it has previously adopted. Westport v. Norwalk, 167 Conn. 151, 155,157; Beach v. Planning Zoning Commission, 141 Conn. 79, 83; North Rollingwood Property Owners Ass'n. v. City Plan Commission, 152 Conn. 518, 521, 522. Assuming the Commission could determine whether proposed subdivision driveways could be built which would meet the requirements of the Town's Driveway Ordinance before approving the lots, it could not actually require construction of the driveways or obtaining of driveway permits as a condition of subdivision approval. The Commission must follow its existing regulations. Beach v. Planning Zoning Commission, supra, 84; South East Property Owners Residents Ass'n. v. City Plan Commission,156 Conn. 587, 591.
The subdivision statutes also do not confer authority upon a planning commission to require security for the cost of construction of private driveways on subdivision lots.[2]
The powers of a planning commission under Chapter 126 of the General Statutes are strictly construed and planning commissions are not allowed to adopt subdivision regulations or exercise powers unless they are clearly granted by the enabling statutes. Avonside Inc. Zoning Planning Commission, 153 Conn. 232, 236; South East Property Owners 
Residents Ass'n. v. City Plan Commission, supra, 591, 592; CT Page 4461 Finn, Trustee v. Planning Zoning Commission, 156 Conn. 540; Peninsula Corporation v. Planning Zoning Commission,151 Conn. 450; Dooley v. Town Plan Zoning Commission, 151 Conn. 151.
Section 8-25 of the General Statutes allows a planning commission to "prescribe the extent to which and the manner in which streets shall be graded and improved and public utilities and services provided" (emphasis added). It also provides for several methods to assure their construction, including "a bond in an amount and with surety and conditions satisfactory to it securing to the municipality the actual construction, maintenance and installation of such improvements and utilities within a period specified in the bond." These provisions are designed to protect the municipality by assuring that public improvements in a subdivision, such as the streets, related drainage facilities, and public utility lines along the streets will be completed at the expense of the subdivider or the owners of subdivision lots. Approved subdivision roads are generally accepted into the town's road system, and by accepting them the town may be required to maintain them and complete their construction. See Thompson v. Portland, 159 Conn. 107, 115; Country Life Properties v. Essex, 23 Conn. App. 281, 285.
This subdivision provided direct access on to an existing public highway and did not require any road construction. There is no necessity for a surety bond "to the municipality" to reimburse it for expenses it was not going to incur or for improvements which were only on subdivision lots. Bonding for the construction of private driveways is beyond the powers of the planning commission, and was an illegal condition which the defendant imposed in approving the plaintiff's subdivision application.
The plaintiff claims that since the conditioning of approval on bonding of driveways is not within the actions of a planning commission may take under section 8-26 of the General Statutes, failure to act on the request to revise the map and change the amount of the bond resulted in an "inferred approval" under section 8-26d C.G.S.
The only actions authorized by a planning commission when reviewing a subdivision under section 8-26 of the General Statutes are for the Commission to approve, modify and approve or disapprove the subdivision application. Carpenter v. Planning Zoning Commission, 176 Conn. 581,592; Moscowitz v. Planning Zoning Commission, 16 Conn. App. 303,308.[3]
CT Page 4462
In Carpenter v. Planning Zoning Commission, supra, 592, 593, 597, it was held that where a planning commission makes approval of the subdivision subject to a condition, such as approval by a coordinate municipal agency, that action is not an "approval" within section 8-26 of the General Statutes, unless the approval by the coordinate agency appears to be reasonably probable. Failure of a planning commission to take one of the three actions allowed under section 8-26, results in an "inferred approval" under section 8-26 sixty-five days after the date of the submission of the application. Id., 593. When the plaintiffs in Carpenter did not appeal within the 20 day period after the inferred approval had incurred under section 8-26, it was held that the Superior Court did not have subject matter jurisdiction over the appeal when it was taken. Id. 593.
While the Commission's action appears to be an approval with an illegal condition, rather than a conditional approval resulting in an inferred approval, this issue does not have to be resolved since in either case the plaintiff did not take a timely appeal from the Commission's decision.[4]
Failure to take an appeal within the statutory time limits goes to subject matter jurisdiction. Cardoza v. Zoning Commission, 211 Conn. 78, 82; Bridgeport Bowl-O-Rama v. Zoning Board of Appeals, 195 Conn. 276, 283; Norwich Land Co. v. Public Utilities Commission, 170 Conn. 1, 6, 7. While a timely appeal could have been used to invalidate the illegal condition, Carpenter v. Planning Zoning Commission, supra, 596, a subdivision bond covering the costs of construction of private driveways, the applicant opted instead to negotiate the amount of the bond with the Commission.
The Commission's approval of extensions of time for posting security for the improvements and meeting the conditions of subdivision approval is only germane to whether the subdivision plan remains valid. The Commission did not and could not extend the statutory time limits for the taking of an appeal from the initial subdivision approval. The deadline for taking an appeal was 15 days after publication of the legal notice, Cardoza v. Zoning Commission, supra, 81, 82, which in this case was November 2, 1989. To the extent that this action is an appeal from the original approval it is clearly too late, since it was commenced May 9, 1990.
To overcome this clear jurisdictional defect, the plaintiff claims that his request at the April 5, 1990 meeting for a change in Note #3 on the subdivision map, for an alteration in the amount of the bond and for a further CT Page 4463 extension of time to post the bond was the basis for an inferred approval and a further appeal when the Commission failed to act on them.
Whether the subdivision expired because the bond was not posted and the map was not signed and filed within the time limits in section 8-25 is not relevant to this issue, and any expiration of the original approval does not make this appeal moot. The only limitation on requiring a planning commission to consider a second subdivision application is that it cannot be required to do so when another application is pending before it. Section 8-26 C.G.S. The commission decided the prior application in October 1989, so it could consider a new application in April 1990, if there was a proposed change in the driveways from the prior map. Under some circumstances it may be able to approve a second application which is similar to the prior, approved subdivision. See Carlson v. Fisher, 18 Conn. App. 488, 497,498; Shippee v. Zoning Board of Appeals, 39 Conn. Sup. 436,438, and cases cited therein.
An illegal condition without statutory authorization can be raised in later proceedings, such as an appeal from another subdivision application. Moscowitz v. Planning Zoning Commission, supra, 313, 315, 316.[5] The right to challenge an illegal condition presupposes a valid action or appeal is brought to raise the issue. An appeal can only be taken from an appealable event. The right of appeal from an administrative agency is created by statute, and unless a statute provides for an appeal, the courts are without jurisdiction to entertain them. Tazza v. Planning Zoning Commission, 164 Conn. 187, 190; East Side Civic Ass'n. v. Planning Zoning Commission, 161 Conn. 558, 560; Sheridan v. Planning Board, 159 Conn. 1, 10; Basilicato v. Department of Public Utility Control, 197 Conn. 320, 322.
Chapter 126 of the General Statutes empowers a planning commission to take certain specified actions. Among them is the requirement to consider a subdivision or resubdivision application. The request made at the April 5, 1990 meeting was not an application for a subdivision or resubdivision as those terms are defined in section 8-18 of the General Statutes. An application for subdivision or resubdivision must be submitted to a planning commission in a form prescribed by the commission. Section 8-26 C.G.S. The plaintiff did not file an application form or the customary documents required for a subdivision application under the Oxford Subdivision Regulations, although a revised version of the approved map was presented at the April 5, 1990 meeting. While the filing of a complete subdivision application is not CT Page 4464 required to start the subdivision process, Leech v. Gaetz,31 Conn. Sup. 81, 82, 84, a letter requesting reconsideration of the bond and a change in a note on an approved map is not an application. Treat v. Town Plan Zoning Commission,145 Conn. 406, 408. A resubdivision requires a change in a map of an approved or recorded subdivision, and the application must effect the street layout or an area reserved for public use on the subdivision map, or diminish the size of any lot on the map and create an additional building lot. Section 8-18
C.G.S. The request here at most was to remove a condition on the prior approved subdivision map.
Section 8-26 requires a planning commission to "approve, modify and approve, or disapprove any subdivision or resubdivision application or maps and plans submitted therewith, . . . within the period of time permitted under section 8-26d." It also provides that "the failure of the commission to act thereon shall be considered an approval. ." Section 8-26d (a) refers to "all matters where a formal application, request or appeal is submitted to a planning commission under this chapter and a hearing is held on such application, request or appeal," and contains time limits for commencing and completing the public hearing and making "decisions on such matters." Casual requests by letter are not "formal" applications. Moreover, section 8-26d (b) states that "a decision on an application for subdivision approval, on which no hearing is held, shall be rendered within sixty- five days after receipt of such application." (emphasis added).
Since the request made was neither a subdivision or resubdivision application, the failure of the commission to act on it within the time periods in section 8-26d is immaterial, and does not result in an inferred approval under section 8-26 as in Caldrello v. Planning Board, 193 Conn. 387; Viking Construction Co. v. Town Planning Commission,181 Conn. 243 and similar cases. Inferred approval under section8-26 only exists where a formal subdivision or resubdivision application has been filed.
Every action of a planning commission or failure to act on a request made to it is not an appealable event. See Sendak v. Planning Zoning Commission, 7 Conn. App. 238,239, 244. Section 8-28 of the General Statutes as amended by P.A. 89-356 section 2, requires a legal notice of "all official actions or decisions of a planning commission, not limited to those relating to the approval or denial of subdivision plans" to be published in a local newspaper within 15 days "after such action or decision". An appeal can be taken "from an action or decision of a planning CT Page 4465 commission" pursuant to section 8-8(a) of the General Statutes. Here the Commission did not act upon the plaintiff's request, except that it granted an extension on May 3, 1990 of the deadline for meeting the conditions of subdivision approval until July 12, 1990. No legal notice of an action or decision was ever published, or required since this was not a subdivision or resubdivision application or one of the other "official actions" that a planning commission is required to decide by statute. See sections8-23 (plan of development); 8-24 (municipal improvements);8-25 and 8-26 (subdivisions); 8-26e (special permits); 8-27
(permits for buildings or structures on lots abutting unaccepted streets); and 8-29 (maps of highway lines). The reference in section 8-28 to publication of and appeals from "official actions and decisions" indicates legislative intent to impose some limits on matters before planning commissions which are appealable, and to avoid inundating the courts with appeals from every minor matter on the commission's agenda. It is not necessary to define the exact parameters of the appeal statute, but a request to get on a planning commission agenda followed by verbal comments at a commission meeting, requesting a change in conditions of an approved subdivision cannot, standing alone, be the basis for an appeal when the commission does not approve what has been requested.
Since there is no subject matter jurisdiction over this appeal, it is dismissed.
ROBERT A. FULLER, JUDGE