[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 STATEMENT OF APPEAL
The plaintiff, Alden Street Partnership, appeals from the decision of the defendant, the Fairfield Town Plan and Zoning Commission, imposing conditions on the Partnership's resubdivision application approval.
 BACKGROUND
By application dated December 30, 1996, the plaintiff, Alden Street Partnership (the Partnership), submitted a resubdivision approval application; (Return of Record [ROR], Exh. 5); and CT Page 11495 special permit/coastal area management application; (ROR, Exh. 6); to the Fairfield Town Plan and Zoning Commission. The Partnership sought to resubdivide a parcel, located in a "B" zoning district, into five lots. (ROR, Exh. 5). A public hearing on the application, scheduled on February 11, 1997; (ROR, Exh. 14); was continued to March 11, 1997. (ROR, Exh. 13; Exh. 16). The Commission voted to approve the application on March 25, 1997, subject to eight conditions. (ROR, Exh. 18).
The Partnership now appeals from the Commission's decision to the Superior Court. In a consolidated matter, Dougiello v. TownPlan and Zoning Commission of Fairfield, CV-97-0342502S, the plaintiffs, Denise A.D. Dougiello and Terri Deutsch, appeal from the Commission's decision with respect to the approval of the resubdivision application.
 JURISDICTION
General Statutes § 8-8 governs appeals taken from the decisions of a zoning commission to the superior court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) BridgeportBowl-O-Rama v. Zoning Board of Appeals, 195 Conn. 276, 283,487 A.2d 559 (1985).
Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 192, 676 A.2d 831 (1996).
The Partnership alleges that it is aggrieved as an applicant and as the contract purchaser of the subject property. (Appeal, ¶ 9). "The interest which supports aggrievement need not necessarily be an ownership interest in the real property"; R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 32.5, p. 538, and cases cited therein; and a contract purchaser of real property may be aggrieved. Id. See, e.g.,Shapero v. Zoning Board, 192 Conn. 367, 376, 472 A.2d 345 (1984).
At the July 29, 1999 hearing before this court, the parties stipulated to facts from which the court finds that the Partnership is aggrieved. CT Page 11496
Timeliness and Service of Process
General Statutes § 8-8(b) provides, in part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (e) further provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
The record does not contain an affidavit of publication, although it does contain a copy of the Commission's decision,dated April 1, 1997. (ROR, Exh. 18). The Partnership alleges that "[o]n March 25, 1997, the TPZ, by Notice of Decision dated April 1, 1997 which was published on said date in accordance with the provisions of statute in the Fairfield Citizen News . . . ." (Appeal, ¶ 7). The Commission admits this allegation in its answer. (Answer, ¶ 7). At the hearing before this court, the parties stipulated to the fact that the decision was published on April 1, 1997.
The present appeal was commenced by service of process on the Fairfield town clerk, and the clerk of the Commission on April 11, 1997. Therefore, the court finds that this appeal was commenced in a timely manner by service of process upon the proper parties.
SCOPE OF REVIEW
In reviewing a subdivision application "[p]roceedings before planning and zoning commissions are classified as administrative. . . . Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached. . . . The action of the commission should be sustained if even one of the stated reasons is sufficient to support it. . . . The evidence, however, to support any such reason must be substantial." (Brackets in original; citations omitted; internal quotation CT Page 11497 marks omitted.) Property Group, Inc. v. Planning ZoningCommission, 226 Conn. 684, 696-97, 628 A.2d 1277 (1993).
DICUSSION
On March 25, 1997, the Commission voted to approve the Partnership's subdivision application, subject to eight conditions. (ROR, Exh. 18). The Partnership appeals from the following two conditions: "1. In consideration of the Views and Vistas Policy of the Connecticut Coastal Management Act and Section 24.2 of the Zoning Regulations, building heights within the subdivision shall be limited to thirty (30) feet to best maintain and enhance the appearance and character of the area and to protect property values" and "2. Ten-foot high arborvitae planted six feet on center shall be required along the southerly boundary of lots 1 and 2 and northerly boundary of lots 4 and 5." (Appeal, ¶ 7).
The Partnership appeals on the grounds that the Commission's decision was illegal, arbitrary and capricious because the Commission had no discretion but to approve the application because it conformed to the regulations; (Appeal, ¶ 8(a)); the Commission lacked authority to attach conditions to its approval because the application conformed to the zoning and subdivision regulations; (Appeal, ¶ 8(b)); the conditions were not authorized by the regulations, or by the Coastal Management Act; (Appeal, ¶¶ 8(c), (d)); the Commission based its decision on irrelevant, inappropriate considerations, and the decision constitutes an abridgement of the Partnership's property rights. (Appeal, ¶ 8(e), (f)).
The Partnership argues that the Commission, acting in its administrative capacity, had no discretion but to approve the application because it conformed with the relevant regulations. It contends that the imposed conditions are null and void because they were not authorized by either the zoning or subdivision regulations, nor by the Coastal Management Act.
The Commission responds that the conditions at issue, limiting building heights to thirty feet, and the planting of ten-foot high arborvitae, were authorized by section 24.2 of the zoning regulations, and that it properly considered the Coastal Area Management Act.
General Statutes § 8-26 "merely provides for the commission to CT Page 11498 approve, modify and approve, or disapprove a subdivision application." (Internal quotation marks omitted.) Carpenter v.Planning Zoning Commission, 176 Conn. 581, 592. 409 A.2d 1029
(1979). "A planning commission . . . is only authorized to take one of three courses of action when considering a subdivision application: it can approve the application exactly as it was submitted; it can make changes to the application to ensure compliance with the subdivision regulations and compatibility with the municipality's comprehensive plan, and then approve the application as so modified; or it can disapprove the application outright." Moscowitz v. Planning Zoning Commission,16 Conn. App. 303, 308-09, 547 A.2d 569 (1988). "[I]t is the nature of the underlying action taken by the planning commission that will determine its legality, not whether it is phrased in terms of a `modification' or `conditional approval.'" (Emphasis in original.) Id., 311.
1. Building Height
The Commission relied upon the Views and Vistas Policy of Connecticut's Coastal Management Act and § 24.2 of the Fairfield Zoning Regulations when it imposed a thirty-foot building height on structures within the Partnership's subdivision. (ROR, Exh. 18).
"The Coastal Management Act [is] expressly concerned with providing uniform standards for evaluating the impact of coastal development, while allowing municipalities to maintain local control over the process." Read v. Planning ZoningCommission, 35 Conn. App. 317, 324, 646 A.2d 222 (1994).
The record reveals that the Partnership's application underwent a coastal site plan review, and this review determined that the subject site was located within a coastal hazard area. (ROR, Exh. 2). The Coastal Management Act (CAM), defines "coastal resources," to include "coastal hazard areas," which are "those land areas inundated during coastal storm events or subject to erosion induced by such events, including flood hazard areas . . . and all erosion hazard areas as determined by the commissioner. . . ." General Statutes § 22a-93(7)(H). With respect to "views and vistas," CAM provides that "`[a]dverse impacts on coastal resources' include but are not limited to . . . degrading visual quality through significant alteration of the natural features of vistas and view points . . . ." General Statutes § 22a-93(15)(F). The coastal site plan review, conducted by Jodie CT Page 11499 Chase, a certified ecologist, had determined that "[t]he proposed project will have neither a positive nor a negative impact on views and vistas." (ROR, Exh. 2).
Section 24.2 of the Zoning Regulations is located within a section entitled "LAND EXCAVATION AND FILL REGULATIONS," and it provides that "[t]he purpose of these Land Excavation and Fill Regulations is to regulate land excavation and fill operations as regulated activities and to preserve and protect the land as a natural resource to regulate activity which would alter the configuration of the surface or subsurface of the land and to regulate its development by means of alternatives which best maintain and enhance the appearance, character and natural beauty of the land, and to protect property values, and public health and safety." (Supp. ROR, Zoning Regulations).
At the public hearing, the neighbors mounted a vigorous opposition to the Partnership's subdivision. During the hearing, they submitted opposition letters to the Commission, as well as an opposition statement and petition, and photographs of the area. (ROR, Exhs. 17).[1] In addition, many neighbors spoke during the hearing, voicing opposition to the Partnership's proposed subdivision on the grounds of flooding, traffic safety, neighborhood density, and size of the proposed structures. (Supp. ROR, Tr., pp. 32-71).
After the neighbors had completed their presentations, Chairman Lang observed that "[t]he neighbors seem to have some concern about the height of the houses." (Supp. ROR, Tr., p. 85). Lang asked Fallon, the Partnership's representative, whether he would "accept as a condition of approval that you comply with the beach zone height regulation rather than the residential zoned." (Supp. ROR, Tr., p. 85). Fallon replied that he wouldn't accept such a condition because" [t]he beach zone is 30 feet; this zone is 40 feet. We are, you know . . . relying on the regulations in [the] B zone." (Supp. ROR, Tr., p. 85). He added that "one of the ways that we hope to make money is to make these homes desirous, so that we're going to do everything we can to make them attractive without `sticking out like a sore thumb,' so we're committed to building 40-foot houses, but I have to respectfully decline a condition like that because I think it would deprive my client of a right that they're entitled to under the regulations, and that they may need some leeway on both the 30 feet in order to comply with the FEMA regulations." (Supp. ROR, Tr., pp. 85-86). CT Page 11500
The subject parcel is located within a "B" residence zone; (ROR, Exh. 5); and the building height regulation governing residence districts, other than Designed Residence Districts and Beach Districts, provides that "[n]o building or other structure shall exceed a height of three (3) stories or forty (40) feet, whichever is less." (Supp. ROR, Zoning Regulations, § 5.2.2).
"The designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district." (Internal quotation marks omitted.) TLC Development, Inc. v. Planning Zoning Commission, 215 Conn. 527, 532-33, 577 A.2d 288 (1990).
The record reflects that the neighbors opposed the subdivision, in part, on the basis that "[t]he sizes of the proposed houses would be inconsistent with the current make-up of the neighborhood," would be "too intensive, too large for the size of the lot" and "would architecturally dominate the neighborhood." (Supp. ROR, Tr., p. 37).
The court finds, however, that the Commission improperly relied upon CAM's "views and vistas" policy, and Zoning Regulation § 24.2, to impose a thirty-foot restriction upon the subdivision's building height. The zoning regulations provide that residences are a permitted use in a "B" residence zone, and the regulations expressly provide that dwellings may reach forty feet or three stories in height, whichever is less. (Supp. ROR, Zoning Regulation § 5.2.2). A planning commission, "acting in its administrative capacity . . . . has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance. . . ." (Citations omitted; internal quotation marks omitted.) Reed v. Planning Zoning Commission,208 Conn. 431, 433, 544 A.2d 1213 (1988).[2]
Therefore, the court finds that the Commission improperly acted in derogation of its own regulations by conditioning its approval of the Partnership's application upon a thirty-foot building height limitation. Accordingly, the court concludes that the Partnership's appeal should be sustained to the extent that the first condition is illegal, arbitrary and capricious.
2. Arborvitae Plantings
CT Page 11501
The Partnership also appeals from the second condition, which mandates the planting of ten-foot high arborvitae along certain boundaries of the subdivision lots. (Appeal ¶¶ 7, 8; ROR, Exh. 18). The Partnership contends that the only reference to trees is found in subdivision regulation § 3.10, which governs the planting of "street trees." The Commission's actual decision did not cite to any specific statutory or regulatory authority in imposing this condition. (ROR, Exh. 18). The Commission argues in its memorandum, however, that there was sufficient record evidence from which it could "make a determination of the potential effect on the appearance and character of the area and to [need to] protect property values." (Brackets in original; internal quotation marks omitted.) (Commission's Memorandum, p. 5.).
At the public hearing, there were concerns expressed regarding privacy. For example, Dougiello, an abutting landowner, emphasized "[t]he proposal for this subdivision puts a house in my side yard. My privacy that I purchased when I acquired my lot would be gone. My property value would definitely depreciate. I feel like I'm in the middle on a wagon train circling it around me." (Supp. ROR, Tr., p. 35). Richard Saxl, an attorney representing the Eastlawn Village Neighborhood Improvement Association, also spoke at the public hearing. (Supp. ROR, Tr., pp. 41-48). At one point, Saxl remarked that "I would also suggest that if you feel compelled to approve this, that you require fencing, you require a lot of landscaping. And I don't mean 5 or six-foot trees, I mean 10 and 12-foot trees. Why? Because these houses are going to start at the roof-top of everything around it. They ought to be entitled to some privacy." (Supp. ROR, Tr., p. 47). Following Saxl's presentation, Fallon offered a rebuttal, and he observed "[Saxl] asks if you are going to approve it, to consider some conditions. We certainly, although I don't think it's, you know we intend to landscape the property. It enhances its marketability. It's better for us. We certainly would entertain any reasonable landscaping conditions that you wanted to impose." (Supp. ROR, Tr., pp. 81-82).
The Commission was also presented with photographs of the existing neighborhood. (ROR, Exh. 17). The photographs revealed several cape-style homes, as well as views of the proposed lot #5, which is a grassy, wooded area. (ROR, Exh. 17).
Unlike the first condition, which imposed a building height restriction in derogation of a regulation expressly governing CT Page 11502 building heights in residence districts, there is no specific regulation addressing tree planting on subdivision lots.[3] As previously discussed, however, zoning regulation § 24.2, which describes the purpose of the land excavation and fill regulations, provides that such purpose, in part, "is to . . . regulate [land] development by means of alternatives which bestmaintain and enhance the appearance, character and natural beautyof the land, and to protect property values, and public health and safety." (Emphasis added.) (Supp. ROR, Zoning Regulations). The commission was "entrusted with the function of interpreting and applying its zoning regulations. . . . The trial court must determine whether the commission has correctly interpreted its regulations and applied them with reasonable discretion to the facts. . . . The plaintiffs have the burden of showing that the commission acted improperly." (Citations omitted; internal quotation marks omitted.) Gorman Construction Co. v. Planning Zoning Commission, 35 Conn. App. 191, 195, 644 A.2d 964 (1994).
The court finds that the Commission properly modified the Partnership's proposal by requiring it to plant 10-foot high arborvitae along the lots of the subdivision. There was evidence in the record from which the Commission could find that the arborvitae planting would address concerns with respect to privacy, harmony with the existent neighborhood, and property values, and that employing such a modification would "maintain and enhance the appearance, character and natural beauty of the land. . . ."
Accordingly, the court finds that the Commission acted in accord with the record evidence, and with its regulations, by requiring the planting of 10-foot high arborvitae. Therefore, the court concludes that the Partnership's appeal should be dismissed to the extent it appeals from the second condition.
 CONCLUSION
For the reasons discussed above, the Partnership's appeal is sustained in part, and dismissed in part. The appeal is sustained with respect to the imposition of the first condition (building height), and is dismissed with respect to the imposition of the second condition (arborvitae plantings).
Lubbie Harper, Jr, Judge